# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JENNIFER COUSINS, *et al.*,

    *Plaintiffs*,

v.

SCHOOL BOARD OF ORANGE COUNTY, FLORIDA, *et al.*,

    *Defendants*.

_____/

**Challenge to Constitutionality of § 1001.42(8)(c) Fla. Stat. (2022)**

**Preliminary Injunctive Relief Requested**

**Case No. 6:22-cv-01312-WWB-LHP**

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs have standing to bring their claims against Defendants.[1] Each Plaintiff has shown injury specific to the legally protected interest implicated in the claims; a causal connection between that injury and the Defendants' actions; and that each Plaintiff's injury is likely to be redressed by an order enjoining enforcement of HB 1557. *See Support Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021).

## I.     Plaintiff students and families have suffered and will suffer injury.

A First Amendment plaintiff has standing when "the operation or enforcement of the [challenged] government policy would cause a reasonable would-be speaker to self-censor," even where the policy is not a direct prohibition. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (cleaned up). "[T]he injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the

---

[1] Consistent with this Court's order, Plaintiffs limit their Reply to selected standing issues. In doing so, Plaintiffs do not waive other arguments or allegations cited in their Complaint and Motion for Preliminary Injunction. Plaintiffs do not present additional evidence here, but reserve their right to do so if an evidentiary hearing is granted. No Defendant takes a position on HB 1557's constitutionality.

challenged governmental action—where First Amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced." *Id.* (internal quotation omitted). Chilled speech is harm. "Litigants who are being chilled from engaging in constitutional activity…suffer a discrete harm independent of enforcement, and that harm creates the basis for [the court's] jurisdiction." *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1241 (11th Cir. 2015) (internal quotation omitted). It is enough, for standing, "that a reasonable student could fear that his speech would get him crossways with the [school], and that he'd be better off just keeping his mouth shut." *Speech First*, 32 F.4th at 1122.

Defendants and Intervenor invent a higher bar for Plaintiffs, rewriting the standard to require direct prohibition, threats, or instructions to remain silent. (*E.g.*, ECF 50, at 9-10; ECF 52, at 6). Even where they do not dispute Plaintiffs' injuries,[2] they argue those injuries are not reasonable by constructing an artificially narrow version of HB 1557. For example, Defendants and Intervenors argue (1) it is unreasonable to allege that "instruction" involves student participation;[3] and (2) the Attorney General's (AG) recent interpretation of the law during litigation should allay any fears caused by the law's text or conflicting interpretations issued by Defendants.[4]

---

[2] *E.g.*, the Intervenor concedes that reprisal would result if a parent complained, but then suggests, without support, that any reprisal would be remote because schools do not act on parental complaints unless forced by a court. (ECF 52, at 6.)

[3] *E.g.*, ECF 50, at 9 ("instruction" has "no bearing on" discussion about family); ECF 54, at 3, 8-9 (defining "instruction" to exclude student engagement); ECF 55 at 13.

[4] *E.g.,* ECF 54, at 2-3 & n.5 (OCSB new guidance is based on state litigation position and is "apparent," despite conflicting interpretations in its previous materials); ECF 54 at 12 (State's motion to dismiss in other case "outright dispels Jen's and Matt's fears").

This strawman argument is incorrect both legally and factually. When a plaintiff alleges that a law is unconstitutionally overbroad and vague, "a court should evaluate the ambiguous as well as the unambiguous scope of the enactment [because] ambiguous meanings cause citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Am. Booksellers v. Webb*, 919 F.2d 1493, 1505-06 (11th Cir. 1990) (cleaned up).

The common sense of this legal principle is illustrated here. Plaintiffs have plausibly alleged that they (or their children) participate in instruction that is discussion-based, including discussion of family and identity. (*E.g.,* ECF 45 at 7-8). To pretend that "instruction" is only what a teacher lectures in a classroom setting ignores that, especially in elementary school, "instruction" requires active discussion among students and educators. Defendants themselves have interpreted "instruction" to include "eliciting discussion" on prohibited topics. (ECF 45 at 6; ECF 45-1 ¶ 11, and Att. 2 ("it was cautioned against specific *discussions* [about same-sex partners] in the event those *discussions* could be deemed classroom instruction" and "were cautioned not to wear clothing that may elicit *discussions* that could be deemed classroom instruction"), Att. 1, at 12 (HB 1557 "prohibits classroom *discussion* about sexual orientation and gender identity"); *see also* preamble to HB 1557 ("prohibiting classroom discussion").

Because of a reasonable fear of enforcement, Plaintiffs have self-censored (ECF 45-3 ¶¶ 7-13; ECF 45-2 ¶ 19) or fear their children will need to self-censor (ECF 45-1 ¶¶ 8-11).[5] Plaintiffs' speech already has been chilled under HB 1557, creating standing

---

[5] Other harms are not substantively addressed in the Responses or here, including harm from additional ambiguity and undefined terms in the law, and harm from the law's notification requirements. *E.g.*, ECF 45, at 7 (teacher fears interfere with student groups);

independent of any enforcement against Plaintiffs.

## II.   Plaintiff CenterLink has suffered and will suffer injury.

Though standing under either theory is sufficient, Plaintiff CenterLink has shown harm and met both associational and organizational standing. Orlando Youth Alliance, Compass Community Center, and the Jacksonville Area Sexual Minority Youth Network (JASMYN) are members of CenterLink. Because each member has been injured and would have standing to sue in its own right, CenterLink has associational standing. *Thompson v. Metro. Multi-List, Inc.*, 934 F .2d 1566, 1571 (11th Cir. 1991). Defendants' primary argument against standing focuses on traceability, which is addressed below in Section III. Some Defendants also attempt to minimize members' injuries by re-writing the rights at stake. For example, DCSB reduces JASMYN's interest to one of contract payment, (ECF 49, at 15), and ignores the injury to its speech and mission caused by HB 1557's content-based restrictions, (ECF 45, at 10, 14). Each member center has alleged concrete injuries as a result of HB 1557. (ECF 45-4 ¶¶ 17, 22, 26; ECF 45-5 ¶¶ 13-14, 16-17; ECF 45-6 ¶ 16; ECF 45-7 ¶ 13(a)-(c).) These harms provide standing for the member centers, and therefore CenterLink, to sue on their behalf.

CenterLink also has organizational standing. Organizations suffer injury in fact when "the defendant's conduct perceptibly impairs the organization's ability to carry out its mission, including by causing drain on the organization's resources." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1287 (11th Cir. 2021) (internal quotation omitted). When an organization has to divert resources from its own projects to counteract defendants' illegal actions, the organization is impaired and suffers injury in

---

ECF 49, at 9-10 (acknowledging harm but denying blame); ECF 52, at 20 (Intervenor does not address parental notification provision claims).

fact. *See Arcia v. Fla. Sec'y of State,* 772 F.3d 1335, 1341 (11th Cir. 2014) (redirection of resources to counteract program of removing voters from voter rolls); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008) (diversion of personnel and time to educating potential voters on compliance with election laws and assisting voters who might be left off registration rolls). Defendants' actions have impaired CenterLink's ability to carry out its mission and forced resource diversion to counteract the unlawful statute, which is not an ordinary program cost. (ECF 45-7 ¶¶ 11-12.)

### III.     All Plaintiffs Have Shown Traceability and Redressability.

Defendants' traceability and redressability arguments are misplaced. On a challenge to the constitutionality of a law, traceability is intertwined with redressability and focuses on enforcement authority, not enactment. *Support Working Animals,* 8 F.4th at 1201-02 (traceability and redressability "often travel together" and depend on whether law contemplates enforcement by defendant). A plaintiff must show at least "that the official has the authority to enforce the particular provision that he has challenged, such that an injunction prohibiting enforcement would be effectual." *Id.* at 1201.

Defendants do not dispute that they are the governing bodies of the school districts charged with enforcing HB 1557. (ECF 1 ¶¶ 17-20.) Instead, they claim they are not to blame for the injuries caused by HB 1557, either because they did not pass the law themselves, or because their discrete acts to implement it have not caused all of Plaintiffs' injuries. (*E.g.*, ECF 49, at 14-15; ECF 54, at 2; ECF 55, at 5, 16-17; ECF 50, at 11-12). However, the Court's task here is not to place blame but, rather, to redress Plaintiffs' injuries sustained by Defendants' enforcement authority.

To determine redressability, the relevant question is "whether a decision in a plaintiff's favor would significantly increase the likelihood that she would obtain relief that

directly redresses the injury that she claims to have suffered." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (cleaned up). The effect of the court's judgment on the defendant must redress the plaintiff's injury "whether directly or indirectly." *Id.* Here, the legislature has charged school districts with implementing and enforcing the law. *See id.* at 1299 (contrasting for standing purposes provisions that do not contemplate affirmative enforcement with provisions that expressly contemplate enforcement through a right to sue); § 1001.42(8)(c)(7). Plaintiffs seek a binding order upon the parties charged with implementing and enforcing HB 1557, which will provide reasonable assurance that they can speak and resume their activities without threat that they or their children will be silenced and shamed, among other harms.

Defendants' and Intervenor's claim that they defeat standing by voluntarily narrowly interpreting it and deciding that certain portions are not yet effective simply fails. (See, e.*g.*, ECF 54, at 8 (suggesting OCSB may not enforce the law until next school year).) The legislature, by inserting a private right of action, expressly contemplated enforcement by school districts of the law as written as of July 1, 2022. Therefore, the AG's interpretation is not sufficient to eliminate the chilling of speech that is caused by the law as written. *See Support Working Animals*, 8 F.4th at 1205 (noting to redress injury, prospective relief must also bind state actors independently empowered to enforce law).

Both Defendants and Intervenor mischaracterize the significance of HB 1557's private right of action, in conflicting ways. For example, Palm Beach argues that parents are independent actors that could cause injury even if the school districts are enjoined. (ECF 55, at 18.) But parents are not positioned to directly enforce the law absent the authority of the school districts to do so. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) (question is whether plaintiff would have been injured in "precisely

6

the same way" if defendants did not act). Intervenor contradicts Palm Beach, claiming the law gives parents no new rights to sue, which may be why the AG fails to appreciate that it cannot remedy Plaintiffs' injuries by unilaterally narrowing the law. (ECF 52, at 14.) HB 1557 gives parents tools to leverage enforcement of the law as written, including by providing standing and powerful financial incentives. *See Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, 339 So. 3d 1070, 1076 (Fla. 1st DCA 2022) (legislature may affect standing and remedies by creating statutory right to sue). This is a practical difference that Plaintiffs have factored into their need to self-censor. (*E.g.,* ECF 45-3 ¶¶ 7, 9-11.) If the Intervenor wishes its narrow interpretation to have force, that is reason to support the relief requested by Plaintiffs—not to oppose it.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily enjoin enforcement of HB 1557 until the present matter is resolved.

Respectfully submitted this 20th day of September, 2022.

*/s/ Debra A. Dandeneau* (Signed on behalf of all Plaintiffs and all Counsel for Plaintiffs)
Debra Dandeneau, Esq. (FBN 978360)
Baker McKenzie LLP
452 Fifth Avenue
New York, NY 10018
(212) 626-4100
debra.dandeneau@bakermckenzie.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 20, 2022, I electronically served the foregoing document on all counsel of record or pro se parties identified on the attached Service List through the Court's CM/ECF filing system.

By: */s/ Debra A. Dandeneau*