**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JENNIFER COUSINS, MATTHEW
COUSINS, P.C., M.C., S.C., N.C., WILL
LARKINS, DAVID DINAN, VIKRANTH
REDDY GONGIDI, K.R.D., R.R.D. and
CENTERLINK, INC.,

       Plaintiffs,

v.                                                        Case No. 6:22-cv-1312-WWB-LHP

THE SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA, THE SCHOOL
BOARD OF INDIAN RIVER COUNTY,
FLORIDA, THE SCHOOL BOARD OF
DUVAL COUNTY, FLORIDA and THE
SCHOOL BOARD OF PALM BEACH
COUNTY, FLORIDA,

       Defendants.
_____/

## ORDER

Plaintiffs challenge the constitutionality of Chapter 22-22, 2022 Laws of Florida

(H.B. 1557), codified as amended at Fla. Stat. § 1001.42, and seek injunctive relief, as

well as nominal and compensatory damages, against each Defendant. (*See generally*

Doc. 79). The cause is currently before the Court on Plaintiffs' Motion for Preliminary

Injunction (Doc. 45), Defendants' Responses (Doc. Nos. 49, 50, 54, 55), intervenor, the

Attorney General of Florida's Opposition (Doc. 52), and Plaintiffs' Reply (Doc. 67).[1]

---

[1] Defendants the School Board of Duval County, the School Board of Indian River
County, and the School Board of Palm Beach County's Responses fail to comply with this
Court's January 13, 2021 Standing Order. Additionally, Plaintiffs' Motion and the Attorney
General of Florida's Opposition fail to comply with the page limitations set forth in Local
Rule 3.01. *See* M.D. Fla. R. 3.01(a)–(b) (providing that a motion may be "no longer than
twenty-five pages inclusive of all parts" and a response may be "no longer than twenty

## I.      BACKGROUND

Plaintiffs consist of a group of parents and their school-age children that attend school in Orange and Indian River Counties (collectively, "**Parent and Student Plaintiffs**") and a non-profit group, CenterLink, Inc. ("**CenterLink**"), that has members operating in Orange, Duval, and Palm Beach Counties. (Doc. 79, ¶¶ 13–16). In 2022, Florida enacted House Bill 1557, which took effect on July 1, 2022, and amended section 1001.42, Florida Statutes. (*Id.* ¶¶ 1, 21). As relevant to this dispute, the newly enacted provisions of section 1001.42 prohibit "[c]lassroom instruction by school personnel or third parties on sexual orientation or gender identity" for children in kindergarten through third grade and provide that such instruction must be age and developmentally appropriate for children thereafter. (*Id.* ¶ 21 (quoting Fla. Stat. § 1001.42(8)(c)(3))). In addition, the law requires school boards to "adopt procedures for notifying a student's parent if there is a change in the student's services or monitoring related to the student's mental, emotional, or physical health or well-being and the school's ability to provide a safe and supportive learning environment for the student[,]" bars school boards from implementing any procedures that prohibit school district personnel from notifying a parent regarding the same or "have the effect of encouraging a student to withhold from a parent such information[,]" and bans school district personnel from discouraging or prohibiting parental notification of and involvement in decisions regarding a student's mental, emotional, or physical health or well-being unless "a reasonably prudent person would believe that

---

pages inclusive of all parts"). In the interests of justice, the Court will consider the filings, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

disclosure would result in abuse, abandonment, or neglect[.]" (*Id.* ¶ 22 (quoting Fla. Stat. § 1001.42(8)(c)(1)–(c)(2))). Defendants, the School Board of Orange County ("**Orange County**"), the School Board of Indian River County ("**Indian River County**"), the School Board of Duval County ("**Duval County**"), and the School Board of Palm Beach County ("**Palm Beach County**"), are the governing bodies charged with implementation of the new law. (*Id.* ¶¶ 17–20).

The Parent and Student Plaintiffs allege that as a result of Orange and Indian River Counties' implementation or contemplated implementation of the new provisions of section 1001.42, certain books, materials, and school activities may become unavailable and their speech and that of others will be chilled. (*Id.* ¶¶ 51–53, 59, 68, 75–78, 80–81). As support for these propositions, the Parent and Student Plaintiffs allege that Orange County has used training memorandums for staff that state that certain books may run afoul of the new laws and will need to be reviewed, that safe space stickers should be removed in certain classrooms, and that teachers should not display family photos with same-sex partners or wear clothing with messages supporting gay rights. (*Id.* ¶¶ 51, 57). With respect to Indian River County, the Parent and Student Plaintiffs allege that the County has discussed rescinding a lesbian, gay, bisexual, transgender, queer, and questioning ("**LGBTQ+**") Administrative Resource Guide and the Superintendent plans to make proposed changes to the current guide. (*Id.* ¶ 81).

CenterLink is a non-profit organization that provides support for its members, which consist of LGBTQ+ community centers across the country, including in Orange, Duval, and Palm Beach Counties. (*Id.* ¶¶ 16, 82). CenterLink alleges that a number of its members work with youth and provide trainings in schools. (*Id.* ¶¶ 87–88). As relevant to

this litigation, CenterLink has a member that works directly with Duval County through a subcontract to provide various parent and teacher trainings, collaborate on policies and procedures for student support and anti-bullying, and provide support for students referred by school district staff. (*Id.* ¶ 92). CenterLink alleges that since the passage of the amendments to section 1001.42, its Duval County member has not received any student referrals, its standing monthly meetings with Duval County have been canceled, and teachers are no longer attending its meetings. (*Id.* ¶¶ 93–94, 96). CenterLink also alleges that its member in Palm Beach County has seen a drop in student referrals from teachers concerned about how the new law will be implemented. (*Id.* ¶ 100).

As a result of the foregoing, on July 25, 2022, Plaintiffs filed the Complaint (Doc. 1), alleging claims against Defendants for Deprivation of Freedom of Speech and Expression, and Overbreadth under the First Amendment (Count I), Deprivation of Due Process of Law under the Fourteenth Amendment (Count II), and Deprivation of Equal Protection of the Laws under the Fourteenth Amendment (Count III). (*See generally id.*). Over a month later, Plaintiffs filed the Motion for Preliminary Injunction. (Doc. 45 at 25). The Florida Attorney General, Ashley Moody, ("**Attorney General**") filed an Unopposed Motion to Intervene (Doc. 51), which was granted. (Doc. 62 at 6). Thereafter, Plaintiffs filed the First Amended Complaint, asserting the same claims against Defendants and also including claims for nominal and compensatory damages. (*See generally* Doc. 79).

## II.   LEGAL STANDARD

"The grant or denial of a preliminary injunction is within the sound discretion of the district court[.]" *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). A district court may only grant injunctive relief if the moving party establishes: "(1) it has a substantial

likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## III. DISCUSSION

Plaintiffs seek a preliminary injunction enjoining Defendants from enforcing or taking actions to enforce section 1001.42(8)(c), Florida Statutes during the pendency of this litigation.

### A. Evidentiary Hearing

Along with their Motion, Plaintiffs filed a Request for Oral Argument and Evidentiary Hearing (Doc. 46). Thereafter, the Court ordered the parties to submit a joint notice to inform the Court if an evidentiary hearing was necessary to resolve the merits of Plaintiffs' Motion, including identifying with particularity any disputed issue of material fact or credibility determination that would impact the Court's resolution of the Motion. (Doc. 47 at 1). In the Joint Notice (Doc. 59), Plaintiffs again requested a hearing "because there are disputed material facts." (*Id.* at 2). Defendants and the Attorney General argue that no evidentiary hearing is necessary because their responses to the Motion fail to raise any new issues of fact. (*Id.* at 3–6). Having reviewed the parties' submissions, the Court finds that Plaintiffs have failed to state with sufficient particularity any material issue of

fact necessitating an evidentiary hearing. Therefore, the Court can and will resolve the pending Motion on the paper record submitted by the parties. *See Cumulus Media, LLC v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." (quotation omitted)).

**B.    Likelihood of Success on the Merits**

In their Motion, Plaintiffs argue at length that they are likely to succeed on the merits of each of their claims. Specifically, Plaintiffs argue that they are likely to prevail on the merits of their claims that section 1001.42(8)(c) violates the First and Fourteenth Amendments. (Doc. 45 at 11, 16, 19). Defendants argue the contrary.

As an initial matter, the First Amended Complaint constitutes an impermissible shotgun pleading. "The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (quotation omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (noting

that shotgun pleadings drain judicial resources, and the district should act *sua sponte* to define the issues at the earliest possible stage).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Here, although Plaintiffs have not incorporated each count into the successive counts, they have run afoul of each of the remaining categories of shotgun pleading. To start, the First Amended Complaint is over fifty pages long and contains lengthy and unnecessary argument as to the reasons for the enactment of section 1001.42(8)(c), a recitation of proposed but unadopted amendments to the bill prior to its passage that does not appear to have any logical connection to Plaintiffs' claims other than to attempt to besmirch the legislators involved in its passage, who are not defendants in this litigation, discussion of the actions of other school boards and districts that are not defendants in

this litigation, and citation and discussion of provisions of the new law that are not relevant to the challenges actually raised in the counts. Additionally, the First Amended Complaint contains extensive facts and anecdotes regarding the impact of the legislation on Plaintiffs prior to the law's effective date, which do not appear to be logically related to any challenge to the enforcement or threatened enforcement of the law. Conversely, despite challenging the implementation of the new law by Defendants, Plaintiffs have largely offered only vague and conclusory factual allegations as to any actions taken by the various school boards that are actually named Defendants in this litigation to implement section 1001.42(8)(c). Moreover, each count challenges the entire amendment as unconstitutional, without specifying the particular subsections and portions of the new law Plaintiffs contend violate their constitutional rights.

Second, the First Amended Complaint improperly lumps multiple causes of action into a single count. For example, Count I alleges that the entire amendment violates the First Amendment because it impermissibly chills speech, is viewpoint based discrimination, violates a student's right to receive information, and is overbroad. Not only does Count I fail to specify what provision or provisions of the law Plaintiffs are challenging under each First Amendment theory, it also inappropriately sets forth a number of different First Amendment causes of action in a single count.

Finally, the First Amended Complaint improperly asserts each of the three counts against each Defendant without specifying in what way each Defendant has specifically violated one or more Plaintiffs' rights. Thus, the First Amended Complaint is far from a short and simple recitation of the facts entitling Plaintiffs to relief, and its shotgun nature

makes it virtually impossible for this Court to determine the likelihood of success on the merits of any of the claims alleged therein.

Indian River County also astutely notes that Plaintiffs have failed to properly allege, or argue in their Motion for Preliminary Injunction, the elements of a claim brought against a local government pursuant to 42 U.S.C. § 1983.[2] "[A] municipality may be held liable [under § 1983] 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1263 (11th Cir. 2010) (quoting *Denno*, 218 F.3d at 1276). Thus, "[i]n order to state a claim under § 1983 against the [school board], Plaintiff[s] must allege that [they] suffered a constitutional injury, and that [their] injury was caused by 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Rogers v. City of Selma*, 178 F. Supp. 3d 1222, 1243 (S.D. Ala. 2016) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). "To hold the municipality liable, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). However, both the First Amended Complaint and Plaintiffs' Motion fail to specify what policy or custom of each Defendant supports liability under the First or Fourteenth Amendments. Instead, Plaintiffs dedicate their time exclusively to arguing that the underlying law is unconstitutional, without specifying any

---

[2] "School boards constitute branches of local government and thus may be subject to liability under *Monell*." *Denno v. Sch. Bd. of Volusia Cnty.*, 218 F.3d 1267, 1276 n.9 (11th Cir. 2000).

causal link between the actions of these Defendants and the alleged deprivation of a constitutional right. On this basis alone, the Court finds that Plaintiffs have failed to show a likelihood of success on the merits on any of the claims they attempted to allege in the First Amended Complaint.

In addition to the above, each Defendant also argues that Plaintiffs lack standing to bring the claims alleged in the First Amended Complaint. Although the Court has already determined that Plaintiffs' Motion fails for the reasons stated above, because the question of standing is jurisdictional, the Court will address Defendants' arguments. "The Constitution limits the jurisdiction of the federal courts to actual cases or controversies." *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. art. III, § 2). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Id.* at 1365–66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The foremost standing requirement is injury in fact. An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the

manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).

> 1.    *CenterLink*

CenterLink brings claims against Duval, Orange, and Palm Beach Counties on its own behalf and on behalf of its affected member centers, the Jacksonville Area Sexual Minority Youth Network ("**JASMYN**"), the Orlando Youth Alliance ("**OYA**"), and Compass Community Center ("**Compass**"). "An organization can establish standing in two ways: (1) through its members (i.e., associational standing) and (2) through its own injury in fact that satisfies the traceability and redressability elements." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022). "An organization has standing to sue on its own behalf if it meets the standing requirements applicable to individuals." *Women's Emergency Network v. Bush*, 323 F.3d 937, 948 n.13 (11th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)). "An organization has standing to enforce the rights of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

With respect to its individual standing, CenterLink argues that it has suffered an injury in fact under the diversion of resources theory. "Under this theory, an organization has standing if the defendant's illegal acts impair its ability to engage in its projects by

forcing the organization to divert resources to counteract those illegal acts." *Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1114 (quotation omitted). "To establish standing under a diversion of resources theory, an organizational plaintiff must explain where it would have to 'divert resources away *from* in order to spend additional resources on combating' the effects of the defendant's alleged conduct." *Id.* (quoting *Jacobson*, 974 F.3d at 1250). In support of this argument, CenterLink's chief executive officer states that CenterLink has "spent an average of four to eight hours per week since the passage of [section 1001.42(8)(c)] responding to member inquiries and creating educational materials about the law[,]" which it otherwise would have directed toward providing services to its members. (Doc. 45-7, ¶¶ 11–12). Although certainly lacking in detail, at the pleading stage this is likely sufficient to allege an injury in fact for past harms. *See Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1115. Here, however, CenterLink is also seeking prospective relief. "[T]he Supreme Court has instructed that 'standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).'" *Bongiovanni v. Austin*, No. 3:22-cv-237, 2022 WL 1642158, at *7 (M.D. Fla. May 24, 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 2210–11 (2021)); *see also Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). "That a plaintiff has standing to bring one claim does not save another claim for which he does not; 'standing is not dispensed in gross.'" *Mack*, 994 F.3d at 1356 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)). Thus, CenterLink must also establish an injury sufficient to support standing for prospective relief.

"When a plaintiff seeks prospective relief to prevent a future injury, it must establish that the threatened injury is certainly impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020) (quotation omitted). Nothing in the First Amended Complaint or CenterLink's Declaration state that it reasonably anticipates that it will continue to suffer the alleged harm into the future, and it is not reasonable to infer that questions regarding the content of the new law will continue indefinitely or that CenterLink will have to continue to divert resources to creating educational materials, as there have been no changes in the law since its passage and enactment. Thus, the Court is not satisfied that CenterLink has shown that the threatened injury of resource diversion is certainly impending at this juncture.

Moreover, CenterLink's injury must also be traceable to the actions of Defendants and redressable by a favorable ruling to confer Article III standing. *Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1115. First, "[t]he injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560–61). In their Reply, Plaintiffs argue that they have sufficiently established traceability because Defendants are the officials tasked with enforcement of the statute. However, the case relied on by Plaintiffs, including CenterLink, for the proposition that mere enforcement authority is sufficient clearly states that this, at most, applies where there has been an enforcement or threat of enforcement against the plaintiff that caused or could cause the alleged injury. *Supporting Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202–03 (11th Cir. 2021). CenterLink has not alleged or shown that Duval, Orange, or Palm Beach Counties have enforced the law against CenterLink, have the authority to enforce the law against

CenterLink in any way, or have threatened to do so. Moreover, the harm that CenterLink seeks to vindicate—diversion of resources—is in response to the existence of the law itself "and the economic consequences that its passage has visited or will visit on" the organization, not any action to enforce the law or threat to enforce the law by Duval, Orange, or Palm Beach Counties. *See id.* at 1203. The Eleventh Circuit has clearly rejected standing in these circumstances. *Id.*

Furthermore, CenterLink has also failed to establish that any harm it has suffered would be redressable by a favorable decision in this case. "Standing's redressability requirement mandates that it be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* at 1205 (quoting *Lujan*, 504 U.S. at 561). As set forth in the First Amended Complaint, JASMYN, OYA, and Compass are three of twenty-seven members in Florida alone. (Doc. 79, ¶ 82). Although the First Amended Complaint and CenterLink's Declaration state that CenterLink has expended resources "responding to member inquires" and "calls for assistance from multiple Florida member centers[,]" neither the First Amended Complaint nor the Declaration state that any of those calls or requests came from JASMYN, OYA, or Compass or, assuming they did, what percentage of CenterLink's resources were diverted as a result of responding to and educating JASMYN, OYA, and Compass as opposed to its other Florida members. (*Id.* ¶ 84; Doc. 45-7, ¶ 11). Thus, even if this Court enjoined Defendants from enforcing the law and ordered damages, CenterLink has failed to establish that such action would redress its alleged harm in this case. Accordingly, the Court finds that CenterLink has failed to establish Article III standing on its own behalf with respect to Duval, Orange, and Palm Beach Counties.

In the alternative, CenterLink asserts associational standing on behalf of JASMYN. (Doc. 45-4, ¶¶ 2, 4–5; Doc. 79, ¶¶ 16, 92–97). In 2021, JASMYN served over 1,200 individuals between the ages of thirteen and twenty-nine and has over 150 members enrolled in the Duval County Public School system. (Doc. 45-4, ¶ 4). JASMYN also has a subcontract with Duval County to provide services under a grant that Duval County received from the Centers for Disease Control and Prevention. (*Id.* ¶ 9; Doc. 49-1 at 2). JASMYN's subcontract with Duval County was renewed on August 1, 2022. (Doc. 49-1 at 10–17).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State, Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Duval County argues that JASMYN lacks standing because it has not alleged an injury in fact and, therefore, CenterLink also lacks standing. In their Reply, Plaintiffs direct this Court to the Declaration of Cindy Watson on behalf of JASMYN for the following purported injuries: (1) meetings with Duval County were canceled in March, April, and May 2022, and regular meetings have not resumed; (2) a student referral was blocked "[w]ithin the first few weeks after [the law] was passed" and JASMYN has not received any further referrals; and (3) "[a]s a result of [the law]," JASMYN has had to reallocate staff and program resources "to respond to the increased fears and isolation of LGBTQ students." (Doc. 45-4, ¶¶ 17, 22, 26).

With respect to JASMYN's diversion of resources injury, the same analysis as set forth above applies. To be clear, JASMYN has not alleged or provided evidence that this diversion of resources is or is likely to be ongoing, that it is a result of any action by Duval County to enforce the law—as opposed to a consequence of the existence of the law itself—, or that an injunction against the enforcement of the law would redress the feelings of fear and isolation that it argues have resulted to students as a result of the law's enactment.

Turning to JASMYN's other alleged injuries, even assuming that these were sufficient to constitute injuries under Article III, Plaintiffs have not adequately established traceability and redressability. First, JASMYN cites the cancelation of meetings in March, April, and May 2022, but the law did not become effective until July 2022. As set forth above, actions taken before the law went into effect cannot reasonably be said to be actions to enforce the law, which could not in fact be enforced until it became a law. *See Supporting Working Animals, Inc.*, 8 F.4th at 1203. The same is true of the alleged referral that was blocked by Duval County shortly after the bill was *passed*. (Doc. 45-4, ¶ 22). Plaintiffs cannot seriously contend that an action taken before the law went into effect was a harm that is fairly traceable to the enforcement of the law, which could not yet be enforced. To the extent JASMYN cites the ongoing lack of meetings and referrals, it has offered nothing to indicate that this is the result of an effort to enforce the new law or how this would fall under any of the challenged provisions of the law, which prohibit "[c]lassroom instruction," not meetings, teacher trainings, student leadership retreats sponsored and hosted by a third-party, or referrals for services outside of the classroom.

Instead, JASMYN, at most, offers a conclusory statement that the conduct of Duval County has changed in the months following the passing of the new provisions.

Lastly, JASMYN offers no evidence or basis to find that an injunction against the enforcement of the new law would redress any prospective harms. Specifically, JASMYN has not provided any evidence or argument that, absent the new provisions of the law, Duval County would be required, or even inclined, to resume the monthly meetings or continue to make student referrals; JASMYN has not directed this Court to any legal requirement that Duval County would have to hold such meetings or make such referrals, while Duval County has affirmatively stated that it is not so required. (Doc. 49-1 at 4, 6, 18). Therefore, the Court finds that CenterLink has likewise failed to establish associational standing with respect to its claims against Duval County.

CenterLink claims associational standing against Orange County on behalf of OYA. OYA serves 240 youth members ages thirteen to twenty-three, with roughly ninety members enrolled in the Orange County Public School system. (Doc. 45-5, ¶ 10). OYA claims that it has been injured by the diversion of resources in responding to increased attendance at its support groups, advertising, and responding to media inquiries "as a result of th[e] new law." (*Id.* ¶¶ 14–17; *see also* Doc. 67 at 4). For the same reasons set forth above regarding CenterLink and JASMYN's diversion of resources injuries, OYA's standing on this basis also fails. There is no indication that these expenditures of money and resources are or are likely to be ongoing, that the diversion is a result of any action by Orange County to enforce the law—as opposed to a consequence of the existence of the law itself—, or that an injunction against the enforcement of the law would redress the feelings of nervousness, anxiety, and distress that OYA argues students have

experienced as a result of the law's enactment. (Doc. 45-5, ¶¶ 14–15 (noting that attendance at support groups has doubled "since [the law] has *passed*" and students are saying "that *the bill* has caused them to feel nervous and . . . given them a heightened sense of anxiety and distress" (emphasis added)), 17 (noting that "there has been a significant amount of capacity, time, and energy being diverted from [OYA's] mission *as a result of this new law*" (emphasis added)); *see also* Doc. 45-7, ¶ 13(a)). Thus, CenterLink has likewise failed to allege associational standing with respect to its claims against Orange County.

Lastly, CenterLink brings claims against Palm Beach County on behalf of Compass. Compass has over 147 youth members from ages seven through twenty-two, with ninety-three percent enrolled in Palm Beach County public schools. (Doc. 45-6, ¶ 8). CenterLink also bases its associational standing on Compass's alleged diversion of resources injury. (Doc. 67 at 4; *see also* Doc. 45-6, ¶ 16; Doc. 45-7, ¶ 13(b)). For similar reasons as those regarding CenterLink, JASMYN, and OYA's diversion of resources injuries, Compass's standing on this basis also fails. As an initial matter, the chief executive officer of Compass does not actually state that any resources have been diverted. Instead, she states that the organization has seen an increased demand for its services that exceeds its current capacity. (Doc. 45-6, ¶¶ 16–19). However, this fails to "explain where [Compass] would have to divert resources away *from* in order to spend additional resources on combating" the effects of the law. *Ga. Ass'n of Latino Elected Offs.*, 36 F.4th at 1114 (quotation omitted). Moreover, although the chief executive officer nominally blames Palm Beach County's enforcement of the bill as the source of its injury, neither Compass nor CenterLink elaborate on specifically what actions to enforce the law

after July 1, 2022, have caused the alleged diversion of resources. (*See* Doc. 45-6, ¶ 16; Doc. 45-7, ¶ 13(b)). Instead, CenterLink argues that the diversion of resources is the result of the existence of the law itself and does not argue that Palm Beach County has taken, or threatened to take, any actions that have resulted in a diversion of resources for Compass.[3] (Doc. 45-7, ¶ 13(b)). Furthermore, neither CenterLink nor Compass have alleged or argued that an injunction against the enforcement of the law would redress the feelings of erasure for students and the anxiety and distress for parents that Compass argues have resulted because of the law's enactment. (Doc. 45-6, ¶¶ 17, 27, 31). Accordingly, CenterLink has likewise failed to show that it has associational standing with respect to its claims against Palm Beach County.

2.   *Parent and Student Plaintiffs*

Plaintiffs David Dinan and Vikranth Reddy Gongidi bring claims against Indian River County on their own behalf and on behalf of their minor children, K.R.D. and R.R.D. Dinan and Gongidi are a married same-sex couple. (Doc. 79, ¶ 15). R.R.D. and K.R.D. are Dinan and Gongidi's adopted children and are currently in the third and fourth grade, respectively, in the Indian River County public school system. (*Id.* ¶¶ 72–73). In his Declaration in support of the Motion for Preliminary Injunction, Dinan states that he and Gongidi have been harmed by the new law because it causes them to self-censor during school activities. (Doc. 45-3, ¶ 7). For example, while chaperoning K.R.D.'s field trip

---

[3] Although the First Amended Complaint and the Compass Declaration appear to allege that Palm Beach County has taken enforcement actions that have impacted Compass's members, CenterLink does not rely on this as a basis to support its standing in either its Reply or Declaration. Accordingly, because CenterLink bears the burden of establishing standing, the Court limits its analysis to the arguments and evidence actually presented and advanced by CenterLink. *See Lujan*, 504 U.S. at 561.

during the 2021–2022 school year, Dinan states that he "felt chilled and unable to mention my husband" due to the passage of the new law. (*Id.*). Additionally, Dinan claims that he asked R.R.D. not to share details about a family trip to London for a pride festival upon his return to school this year because it could prompt discussion of sexual orientation. (*Id.* ¶ 8). Dinan also states that he and his husband have begun to mind their appearance and censor expression while attending school events to avoid being "deemed 'inappropriate' by [other] parents[.]" (*Id.* ¶ 10).

In their Reply, Plaintiffs argue that the Parent and Student Plaintiffs have established an injury in fact because they have shown that a reasonable person would feel that their speech was chilled by section 1001.42(8)(c). In the First Amendment context, "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences. In such an instance . . . , the injury is self-censorship." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) (quotation omitted). "To determine whether a plaintiff bringing a First Amendment free speech claim established an imminent injury, 'we simply ask whether the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor—even where the policy falls short of a direct prohibition against the exercise of First Amendment rights.'" *Henry v. Att'y Gen., Ala.*, 45 F.4th 1272, 1288 (11th Cir. 2022) (quoting *Speech First, Inc.*, 32 F.4th at 1120). Furthermore, to the extent that Plaintiffs are seeking prospective relief, they "must show a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation omitted).

First, Plaintiffs have made no allegation that K.R.D.'s speech has been chilled or likely will be chilled in the future. Neither the First Amended Complaint nor Dinan's Declaration state that K.R.D. has felt chilled, expressed a desire to exercise any right to speak on issues of sexual orientation or gender identity at school or that, if K.R.D. did so, it would not be in an age and developmentally appropriate manner. The same is true of Dinan and Gongidi. Although they make vague allegations regarding their self-censorship at school events before the law went into effect, they fail to state any detail as to how they wished to exercise their rights since the law actually went into effect or might wish to exercise their rights in the future. "[G]eneralizations" and the "mere assertion of a chill" without "any detail, such as when, where, or how he intends to exercise his right to free speech in the future, that illuminates the specifics of his claimed injury . . . is insufficient to demonstrate an injury in fact[.]" *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220–21 (11th Cir. 2010); *see also Shift v. Gwinnett Cnty.*, No. 1:19-cv-01135, 2020 WL 864938, at *3 (N.D. Ga. Feb. 12, 2020); *Lacroix v. Lee Cnty*, No. 2:18-cv-143-FtM, 2018 WL 3536173, at *5 (M.D. Fla. July 23, 2018). On this basis alone, K.R.D., Dinan, and Gongidi have failed to allege an injury in fact.

Second, R.R.D's purported self-censorship (at his parent's direction) regarding his family vacation—and any possible self-censorship by K.R.D., Dinan, and Gongidi in their dress and general family discussion—do not amount to a cognizable injury as currently alleged. The relevant question is whether the "operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor[.]" *Speech First, Inc.*, 32 F.4th at 1120 (citations and quotations omitted). Here, Plaintiffs have not alleged any non-conclusory facts to show that a reasonable would-be speaker would feel

compelled to self-censor. To be clear, the law only prohibits "classroom instruction by school personnel or third parties." Fla. Stat. § 1001.42(8)(c)(3). Regardless of the alleged vagueness of the term "classroom instruction," Plaintiffs have not directed this Court to any fact that would lead a reasonable person to believe that the law prohibits students from discussing their families and vacations at school or even on a school assignment, or that it would prohibit a parent from attending a school function in a "pride" t-shirt or generally discussing their family structure in front of other people. Moreover, Dinan states that he fears reprisal from other parents for such speech, but the law unquestionably does not permit one parent to sue another for inappropriate dress at a school function. Simply put, Plaintiffs have failed to provide anything more than vague and conclusory allegations that fail to state how they wish to exercise their First Amendment rights now or in the future and how doing so would arguably be proscribed by section 1001.42(8)(c). Thus, these Plaintiffs have fallen short of establishing standing to assert a First Amendment claim for chilled speech against Indian River County.[4]

---

[4] The Court notes that Plaintiffs have only addressed standing under the First Amendment and their theory that the new law impermissibly chills speech. (Doc. 67 at 1–2 & n.5). Because the Court has already determined that the First Amended Complaint constitutes a shotgun pleading, and because the Court will grant Plaintiffs leave to amend in an effort to correct both the shotgun and standing issues, the Court declines to *sua sponte* address Plaintiffs' standing under the remaining First Amendment claims or their Fourteenth Amendment claims. Nevertheless, the Court notes that it has concerns regarding Plaintiffs' standing with respect to these claims as well because, again, Plaintiffs have offered little more than conclusory allegations of conduct that occurred after the enactment of section 1001.42(8)(c) that is attributable to the actions of Defendants, or that they intend to engage in conduct that would arguably subject them to punishment or discrimination as a result of the new law. *See Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988, 992–93 (11th Cir. 2022); *Harrel*, 608 F.3d at 1254; *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 884 (11th Cir. 2000).

Plaintiffs Jennifer and Matthew Cousins bring claims against Orange County on their own behalf and on behalf of their minor children. Each of their children attend public schools in Orange County—P.C. in first grade, M.C. in third grade, S.C. in seventh grade, and N.C. in ninth grade. (Doc. 45-1, ¶ 3). S.C. recently came out, including at school, as gender non-binary. (*Id.* ¶¶ 5–6). Jennifer Cousins alleges that she, her husband, and her children have been or will be harmed by Orange County's enforcement of the new law because it will chill the speech of her children at school, cause S.C. to experience increased bullying by S.C.'s peers, and potentially prohibit schools from providing clubs supporting the LGBTQ+ community. (*Id.* ¶¶ 8–11, 17, 19–22).

As an initial matter, for the reasons set forth above as to the Parent and Student Plaintiffs in Indian River County, the Orange County Plaintiffs have likewise failed to provide anything more than generalizations regarding their intentions to engage in speech at school that is even arguably prohibited under the new law. Jennifer and Matthew Cousins have not argued or alleged that they feel that their speech has been chilled or that they have any intention of attempting to offer instruction on topics of sexual orientation or gender identity in an Orange County public school now or in the future. Additionally, the First Amended Complaint and Jennifer Cousins's Declaration make only passing reference to N.C. and the generalized statements that he does not feel that his school will be safe this year and that he will have to "censor [him]self from discussing [his] sibling[.]" (Doc. 45-1, ¶ 21; Doc. 79, ¶ 59). These statements fall far short of providing sufficient specificity of how, when, or where these Plaintiffs intend to engage in speech that is arguably chilled under the new law.

Similarly, as to P.C. and M.C., Plaintiffs have only alleged that P.C. and M.C. are afraid that they will be prohibited from discussing S.C. at school and completing school assignments. (Doc. 45-1, ¶¶ 8, 21). They also assert that S.C. will be prevented from discussing S.C.'s identity in class. (Doc. 79, ¶¶ 53–56). These generalized statements and concerns fall short of showing that P.C., M.C., or S.C. have or are likely to suffer an injury in fact as the result of chilled speech. Even assuming that P.C., M.C., S.C, and N.C.'s threadbare allegations regarding their intention or desire to exercise their First Amendment rights were adequate, Plaintiffs fail to state how this would constitute classroom instruction even under the most liberal reading of the statute. Furthermore, with respect to S.C. and N.C., Plaintiffs fail to state how, even if simply discussing S.C. in class or on a classroom assignment could constitute classroom instruction within the meaning of section 1001.42(8)(c), such statements or comments would not be age and developmentally appropriate for seventh or ninth grade students.

Insofar as the Cousins' claims are instead based on their fear that S.C. will be subjected to greater bullying and public schools will no longer be able to offer certain clubs and groups, Plaintiffs fail to state how this would confer standing. First, the Cousins Plaintiffs have not pointed this Court to any policy or procedure from Orange County that they allege has resulted in any increase in bullying that S.C. might experience at school. While the Court is sympathetic to the Cousins' fear that their child may be bullied, it is simply a fact of life that many middle school students will face the criticism and harsh judgment of their peers. S.C. is not alone in this regard. Indeed, middle school children bully and belittle their classmates for a whole host of reasons, all of which are unacceptable, and many of which have nothing to do with a classmate's gender identity.

Here, S.C. has failed to allege any facts demonstrating that the actions of S.C.'s peers have resulted in an injury to a legally protected interest or are a result of, or directly related to, any enforcement actions taken by Orange County. Second, any allegation that the public schools may be prevented from offering certain clubs and services fails to apprise this Court of how this chills Plaintiffs' speech or otherwise amounts to a constitutional deprivation of rights. Therefore, the Court finds that the Cousins Plaintiffs have also fallen short of establishing standing in this case.

Finally, Plaintiff Will Larkins, a senior in an Orange County public school, brings claims against Orange County through his next of kin. (Doc. 45-2, ¶ 2). Larkins identifies as gay and non-binary. (*Id.*). With respect to speech, Larkins states that he is concerned that he "won't be able to educate [his] peers on LGBTQ+ history, culture, and issues[.]" (*Id.* ¶ 19; *see also* Doc. 79, ¶ 68). However, Larkins's allegations, like the other Parent and Student Plaintiffs, fall short of providing the factual support necessary to confer standing under the First Amendment. Larkins has not stated how, when, or where he would like to provide such education. A generalized desire to discuss issues relevant to the LGBTQ+ community is not sufficient. Additionally, it is not clear to the Court how this would arguably constitute classroom instruction within the meaning of the new law and how, even if it did, such desired communication would not be age and developmentally appropriate for high school students. To the extent Larkins directs this Court to past discipline, the Court reiterates that such actions by Orange County could not have been in the enforcement of section 1001.42(8)(c), which was not yet law when the discipline occurred. Thus, for the reasons discussed with respect to the other Parent and Student

Plaintiffs, Larkins has also failed to show a sufficient injury to confer standing in this matter.[5]

### C.    Irreparable Harm, Harm to Defendant, and Public Interest

Having determined that Plaintiffs have failed to show a likelihood of success on the merits and to establish jurisdiction for their claims, this Court need not address the remaining prongs of the preliminary injunction test. *See Snook v. Tr. Co. of Ga. Bank of Savannah, N.A.*, 909 F.2d 480, 487 (11th Cir. 1990) ("Having determined that the district court acted within its discretion in finding no irreparable injury, we need not address the balance of harm between the plaintiffs and the trustees or whether the public interest would be disserved by a grant of injunctive relief." (citing *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990))); *Help at Home, Inc. v. CAM Enters., LLC*, No. 14-80255-Civ, 2014 WL 12300316, at *1 (S.D. Fla. Aug. 8, 2014) ("In determining whether a preliminary injunction is appropriate, if a court determines that a plaintiff has failed to demonstrate any one of the four factors, it need not address the other three."), *report and recommendation adopted*, 2014 WL 12279516 (S.D. Fla. Sept. 17, 2014).

Nevertheless, the Court notes that the majority of the harm that Plaintiffs allege they have suffered occurred between March and May 2022, but the Complaint was not

---

[5] The Court also notes that at least a portion of Larkins's claims may run afoul of the mootness doctrine in the future to the extent that Larkins seeks prospective declaratory and injunctive relief. "[C]laims by students against educational institutions, at least to the extent they seek declaratory and injunctive relief, are often moot once a student graduates because he or she will no longer be subject to the school action or policy challenged in the litigation." *Lambert v. Bd. of Trs. of Univ. of Ala.*, No. 2:18-cv-1112, 2019 WL 339178, at *6 (N.D. Ala. Jan. 28, 2019) (collecting cases). This case is currently set for trial in the October 2024 trial term, (Doc. 75 at 2), nearly a year and a half after Larkins's anticipated graduation from high school.

filed until July 25, 2022, and the Motion for Preliminary Injunction was not filed until August 26, 2022, several months after Plaintiffs allege they began to suffer harm as a result of the new law and nearly two months after the law went into effect. Even if these harms were a proper basis for relief on the merits, the Eleventh Circuit has clearly stated that such delays in seeking injunctive relief militate against a finding of irreparable harm. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also InVue Sec. Prods. Inc. v. Vanguard Prods. Grp., Inc.*, No. 8:18-cv-2548-T-33SPF, 2019 WL 4671143, at *6 (M.D. Fla. July 1, 2019) ("As such, it is not uncommon for courts to deny a preliminary injunction in the face of unexplained delays of more than two months."), *report and recommendation adopted*, 2019 WL 4673755 (M.D. Fla. Aug. 15, 2019); *Tiber Labs., LLC v. Hawthorn Pharm., Inc.*, 527 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007) ("Where the movant 'unduly delayed in bringing suit,' however, 'thereby negating the idea of irreparability,' a preliminary injunction should not issue." (quoting *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996))).

### D.   Dismissal and Leave to Amend

Because Plaintiffs have failed to establish standing as to the claims alleged in the First Amended Complaint and because the First Amended Complaint constitutes an impermissible shotgun pleading, the Court can and will dismiss the First Amended Complaint in its entirety. *See Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011); *Ferrell*, 311 F. App'x at 259 n.8. Nevertheless, since it is not clear that at least some Plaintiffs cannot establish standing for at least a portion of their claims, the Court is inclined to grant Plaintiffs one opportunity to file an amended pleading. However, Plaintiffs are cautioned that failure to correct the deficiencies noted in

this Order and to adequately establish standing as to each Plaintiff for each alleged constitutional violation and form of relief may result in the dismissal of this case without further leave to amend.

## IV.    CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Motion for Preliminary Injunction (Doc. 45) is **DENIED**.

2. The First Amended Complaint (Doc. 79) is **DISMISSED without prejudice**.

3. On or before **November 3, 2022**, Plaintiffs may file an amended complaint in accordance with this Order. Failure to timely file an amended pleading that corrects the deficiencies noted herein may result in the dismissal of this action without further notice.

**DONE AND ORDERED** in Orlando, Florida on October 20, 2022.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record