UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JENNIFER COUSINS, et al., | |
| *Plaintiffs* | **Challenge to Constitutionality of Fla. Stat. § 1001.42(8)(c) (2022)** |
| v. | |
| THOMAS R. GRADY, et al., | **Preliminary Injunctive Relief Requested** |
| *Defendants,* | |
| and | **Case No.: 6:22-cv-01312-WWB-LHP** |
| ASHLEY MOODY, Attorney General, | |
| *Defendant-Intervenor.* | |

**PLAINTIFFS' RESPONSE TO SCHOOL BOARD DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs respond to Defendant School Board of Orange County ("SBOC"), Defendant School Board of Duval County ("SBDC"), Defendant School Board of Indian River County ("SBIRC"), and Defendant School Board of Palm Beach County ("SBPBC") (collectively the "School Board Defendants") Motions to Dismiss. ECF 109, 110, 111, and 113. Plaintiffs ask this Court to deny the School Board Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint, ECF 82.

**MEMORANDUM OF LAW**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

Section 1001.42(8)(c), Fla. Stat., ("the Law") prohibits "[c]lassroom instruction" regarding "sexual orientation or gender identity" for students in kindergarten through grade 3, or that is "in a manner that is not age-appropriate or developmentally appropriate"

1

for other grades. Fla. Stat § 1001.42(8)(c)(3). The Law also requires parental notification for changes in student services related to a student's "well-being" and imposes requirements regarding "encourag[ing]" or "discourag[ing]" students to discuss their well-being with their parents, Fla. Stat § 1001.42(8)(c)(1)-(2), and empowers parents to sue school districts and seek fees if they are dissatisfied with their implementation of the Law. Fla. Stat § 1001.42(8)(c)(7).

The Law has caused Plaintiffs to self-censor, has deprived them of opportunities for debate and learning, and has made their schools less safe. The increased need for student mental health services is met by community centers who have pivoted to meet the increased demand, while some students' needs go unmet because the Law has impacted school referrals for services. Rather than defend the merits of the Law, which they instead leave to Defendants the members of the State Board of Education and Intervenor, Attorney General Ashley Moody (collectively "State Defendants"), the School Board Defendants primarily argue that it is not any action of theirs that is causing Plaintiffs' harm, but rather the "existence" of the Law. This deflection ignores that in a pre-enforcement facial challenge, it does not matter for standing purposes what actions the school boards, and their respective school districts, have or have not taken. Those actions are relevant to other issues, including imminent harm and vagueness of the Law as illustrated by its broad and inconsistent application. But it is sufficient for standing that the School Board Defendants are required and presumed to enforce the Law that several School Board Defendants acknowledge is causing Plaintiffs' harm. Plaintiffs have standing to challenge the Law and the School Board Defendants' implementation of it. The School Board Defendants' motions to dismiss should be denied.

## II. ARGUMENT

### A. Plaintiffs Have Standing

All Plaintiffs have demonstrated standing. Constitutional standing requires the plaintiff to have (1) "suffered an injury in fact" that is (2) "fairly traceable to the challenged action of the defendant" and that (3) can "likely . . . be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up).

#### 1. Plaintiffs' Have Suffered Injury in Fact

Plaintiffs have brought a *pre-enforcement facial* challenge to the law under the First and Fourteenth Amendments for chilled speech, vagueness, overbreadth, and denial of equal protection, in addition to an as-applied challenge. ECF 82 ¶¶ 136, 141, 144, 148, 165, 172, 185, 187. In this context, although each Defendant has acted to enforce the Law, Plaintiffs need not demonstrate any enforcement whatsoever to prevail.

It is axiomatic that a First Amendment plaintiff has standing when "the operation or enforcement" of a challenged government policy "would cause a reasonable would-be speaker to self-censor," even absent a direct prohibition. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022). The injury requirement for standing is most loosely applied where First Amendment rights are involved because speech can be chilled "even before the law, regulation, or policy is enforced." *Id.* (internal quotation omitted). Simply put, injury exists when a plaintiff avoids expression to avert potential legal consequences of the expression. *Wollschlaeger v. Governor, Florida*, 848 F.3d 1293, 1304-05 (11th Cir. 2017). Similarly, for a Fourteenth Amendment vagueness claim alleging chilled speech, a plaintiff must show merely that (1) the Plaintiff seriously wishes to speak; (2) such speech would arguably be affected by the challenged prohibition, but the rules are at least

3

arguably vague as they apply to him; and (3) there is at least a minimal probability that the rules will be enforced if they are violated. *See Harrell*, 608 F.3d at 1254 (cleaned up).

A person "c[an] bring a pre-enforcement suit when he 'has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]'" *Wollschlaeger*, 848 F.3d at 1304 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Such a plaintiff "does not have to expose himself to enforcement to be able to challenge the law." *Taylor v. Polhill*, 964 F.3d 975, 980 (11th Cir. 2020). It is undisputed that all Plaintiffs "wish to say and do what they believe [the Law] prevents them from saying and doing." *Wollschlaeger*, 848 F.3d at 1304. In this context, Plaintiffs' self-censorship is enough and any argument by the School Board Defendants that they have not disciplined or acted against a particular Plaintiff does not defeat Plaintiffs' standing to the challenge the Law.

Additionally, because Plaintiffs mount a facial challenge to a content-based regulation of speech as substantially overbroad, ECF 82 ¶¶ 159-166, Plaintiffs "are permitted to challenge [the Law] not because their own rights to free expression are violated, but because of a judicial prediction or assumption that the statute's *very existence* may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93, *certified question answered sub nom. Commonwealth v. Am. Booksellers Ass'n, Inc.*, 236 Va. 168 (1988) (emphasis added) (quotation omitted). "This exception from general standing rules is based on an appreciation that *the very existence* of some broadly written laws has the potential to chill the expressive activity of others not before the Court."

4

*Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (emphasis added). The right to bring a facial challenge ensures that affected speakers and listeners will not have to self-censor their speech until each possible application of a law is litigated on a case-by-case basis.[1]

### a. Plaintiffs' Jen and Matt Cousins, N.C., S.C., P.C., and M.C., Will Larkin, and David Dinan, Vik Gongidi, K.R.D., and R.R.D. Have Suffered Injury

The School Board Defendants' arguments rely on an illegitimate narrowing construction, reducing the Law to a restriction on prepared curriculum unilaterally delivered by a teacher in grades K-3 only. ECF 109 at 8, ECF 110 at 9, ECF 111 at 7-8, ECF 113 at 13. They ask the Court to disregard as a matter of law that instruction may include discussion, answering student questions, student and parent presentations, talking with a class about a bullying incident that arises, or reading or providing a book or other materials. The School Board Defendants' approach conflicts with established law requiring the Court to analyze the ambiguous scope of the Law as written, especially where chilled speech is asserted. *Am. Booksellers v. Webb*, 919 F.2d 1493, 1505–06 (11th Cir. 1990) (court must "evaluate the ambiguous as well as the unambiguous scope of the enactment"); *see also Speech First*, 32 F.4th at 1122 (student deciding "he'd be better off just keeping his mouth shut" where speech might "get him crossways" with the school is enough for standing). Contrary to this law, and based solely on their own narrow

---

[1] Defendants SBPBC, SBIRC, and SBDC do not challenge Plaintiffs' standing to make their overbreadth claim, which allows Plaintiffs to assert injury to others and requires no direct action by a particular Defendant against a particular Plaintiff. While Defendant SBOC purports to argue Plaintiffs' standing for this claim, it does not make any argument under the specific overbreadth standard. ECF 109 at 16. Therefore, Defendants' motions must be denied with respect to Plaintiffs' overbreadth claim.

5

interpretation, the School Board Defendants argue that Plaintiffs are unreasonable in perceiving that the Law restricts their own speech and actions. ECF 109 at 8-9, 12-13, ECF 111 at 6-8.

Aside from their improper legal analysis, School Board Defendants' innocuous caricature of the Law conflicts with varied enforcement efforts already undertaken by the state and school districts. The interpretation and implementation of the Law in all Florida school districts, not just Defendants, are relevant to determining the objective reasonableness of Plaintiffs' interpretation. *See, e.g.*, *Speech First, Inc.*, 32 F.4th at 1120 (First Amendment plaintiff has standing when law would cause reasonable speaker to self-censor). Many districts, including Defendants, have interpreted the Law to restrict "discussion" and anything that might "elicit" discussion of sexual orientation and gender identity, including "safe space" stickers (ECF 82 ¶¶ 33, 66); to restrict books and library materials referencing LGBTQ+ identities including those about which the teacher is "unsure" (ECF 82 ¶¶ 37, 41, 58, 59, 128; SBPBC Policy 8.12(7)(e) (restricting library materials for K-3 students "because HB 1557 (2022) prohibits such instruction"), *available at* https://go.boarddocs.com/fl/palmbeach/Board.nsf/goto?open&id=CMRMQE581128); and to restrict or eliminate anti-bullying and support guidance, training, and services for students and teachers (ECF 82 ¶ 38). Additionally, State Defendants recently sent enforcement letters to ten school districts, in which they interpreted the Law to require the outing of students and to restrict the use of student support guides.[2] And SBOC, SBIRC,

---

[2] Letters from and in response to the State Board of Education November 18, 2022 ("SBOE Enforcement Letters"), available at https://www.fldoe.org/policy/state-board-of-edu/meetings/2022/2022-12-14/; *see, e.g.*, State Board of Education Letter to Duval County Schools, November 18, 2022 at 1 (not requiring mere disclosure of sexual orientation, even "absent other factors" may violate Law). These letters are subject to

6

and the State Defendants have all implemented procedures for parents to complain about violations of the Law, encouraging school districts to chill expression according to the standard of the parent most ideologically opposed to the very acknowledgement of LGBTQ+ people and most likely to sue. ECF 82 ¶¶ 28, 39, 42.

This evidence of enforcement in arenas far beyond formal K-3 instruction demonstrates the objective reasonableness of Plaintiffs' interpretation of the Law. Accounting for the full ambiguous scope of the Law, Plaintiffs' own experiences in their school districts, and their awareness of how other districts across the state are interpreting the same law, Plaintiffs' self-censorship is objectively reasonable. ECF 82 ¶¶ 29 n.2, 66, 83.

Plaintiffs Jen and Matt Cousins, and their children, Plaintiffs P.C., M.C., S.C., and N.C., want to speak freely about themselves and their family, but have self-censored or been coerced to remain silent. ECF 82 ¶¶ 54, 62-65, 67, 69. Plaintiff Larkins wants to learn and deliver class presentations about LGBTQ+ history and wants to engage in debate with teachers and peers (ECF 82 ¶¶ 73, 75, 82, 88), but the Law causes him to self-censor (ECF 82 ¶¶ 78, 79, 83, 88).[3] Plaintiffs Dinan, Gongidi, and their children,

---

judicial notice, (Joint Notice Regarding Evid. Hearing on Pls.' Second Mot. for Prelim. Inj., ¶ 4, ECF 125, parties stipulating to authenticity of letters), and the Court may consider the fact of those statements without converting the Motion to one for summary judgment. Fed. R. Evid. 201(b)(2); *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013).

[3] Defendant SBOC especially misinterprets Plaintiff Larkins's fear. In addition to wanting to speak freely about his identity and other speech, Larkins wants to engage in the essential act of instruction, formally presenting to his peers about LGBTQ+ history. ECF 82 ¶ 82. After the enactment of this Law, Larkins was disciplined for this exact same action. It is entirely reasonable for him to fear SBOC reacting similarly and subjecting him to future discipline for speech that fits so squarely in the statute, even under Defendant SBOC's narrow definition of "instruction." *See* ECF 109 at 8 (defining "instruction" as "the action … of teaching.")

Plaintiffs R.R.D. and K.R.D., want to speak freely about themselves and their family, including at school. ECF 82 ¶¶ 92, 94. But the Law has caused them to self-censor about the composition of their family for fear of being shamed, silenced, and stigmatized. ECF 82 ¶¶ 93-94, 95. The student Plaintiffs (P.C., M.C., N.C., S.C., Larkins, K.R.D., and R.R.D.) have alleged a desire to access books and other materials impacted by the Law. *See e.g.*, ECF 82 ¶¶ 57, 59, 96. Additionally, the Law has made it less safe for Plaintiff students to attend school because it has impacted schools' ability to respond to bullying and slurs. ECF 82 ¶¶ 4, 38, 62, 67, 84, 85, 98, 99, 107, 116, 191. Plaintiffs have suffered the necessary injury to confer standing.

Plaintiffs also have alleged facts sufficient for standing under the equal protection guarantee. The Law on its face singles out Plaintiffs' LGBTQ+ identities for disadvantage. Plaintiffs' own speech is chilled, Plaintiff students have been targeted for increased bullying based on their LGBTQ+ identities, (ECF ¶¶ 67, 84, 85, 98) and resources and materials relating to their LGBTQ+ identities have been suppressed (ECF 82 ¶¶ 37, 38, 59 116, 128). By contrast, comparable resources and materials relating to non-gay and non-transgender people have not. ECF 82 ¶38. These injuries are sufficient for standing. *Heckler v. Mathews*, 465 U.S. 728, 738-40 (1984) (unequal treatment, including stigmatizing members of a disfavored group as inferior, constitutes injury for standing).

  **b. Plaintiffs' S.C., N.C., Larkins, and K.R.D. Have Suffered Injury Because the Law is In Effect in All Grades**

In addition to arguing Plaintiffs' interpretation of the law is unreasonable, Defendants SBOC and SBIRC argue the instruction provision of the Law is not "in effect"

8

for students in grades four through twelve.[4] ECF 109 at 6, ECF 111 at 8. They ask this Court to read additional language into the instruction provision, arguing it is tied to standards that "have not yet been adopted." ECF 109 at 6, ECF 111 at 8. However, the law expressly provides that it "shall take effect July 1, 2022," and no portion is excluded. Parental Rights in Education Act, ch. 2022-22, § 3, 2022 Fla. Laws 1, 4 (amending Fla. Stat. § 1001.42 (2022)). Under the Law, June 30, 2023, is merely the general deadline by which the Florida Department of Education "shall review and update" its standards (including standards unrelated to instruction) "as necessary" to comply with the Law. *Id.* § 2. Moreover, school districts already have restricted high school content under the Law (ECF 82 ¶ 39) and have removed books for grades 4-12 under the Law (ECF 82 ¶ 41).[5] Because the Law is in effect for their grades, and for the same reasons discussed above, Plaintiffs' S.C., N.C., Larkins, and K.R.D. have self-censored based on an objectively reasonable fear of enforcement, a sufficient injury to confer standing for their claims.[6]

---

[4] Plaintiffs do not object to the extent Defendants, by taking this position, concede that the Law currently lacks standards required for non-arbitrary and nondiscriminatory application and should be enjoined on that basis.

[5] The actions of non-party school districts interpreting the same Law are relevant to the reasonableness of Plaintiffs' interpretation, including Plaintiffs' S.C., N.C., Larkins, and K.R.D.'s (and their parents') interpretation that the Law is currently in effect for grades 4-12. Furthermore, contrary to Defendant SBOC's assertion, S.C., N.C., and Larkins have alleged that books are being removed in all grades, not just K-3. *Compare* ECF 109 at 12 *with* ECF 82 ¶¶ 37, 59.

[6] Defendants' ripeness arguments fail for the same reason. *See* ECF 109 at 21; ECF 113 at 17-18. Contrary to their assertion, the Law's text does not contain any exception delaying implementation in grades 4-12 until new standards are issued, and Defendants and other school districts are already implementing the Law in these grades, *see, e.g.*, ECF 82 39, 41, 59, 83, and 128. This is one of those cases where "Article III standing and ripeness issues ... boil down to the same question," which is simply whether Plaintiffs, in this pre-enforcement posture, are threatened with the harm of self-censorship. *Wollschlaeger*, 848 F.3d at 1304 (quotation omitted).

### c. Plaintiff CenterLink Has Suffered Injury

Though standing under either theory is sufficient, Plaintiff CenterLink has shown harm and met both associational and organizational standing. Orlando Youth Alliance ("OYA"), Compass Community Center ("Compass"), and the Jacksonville Area Sexual Minority Youth Network (JASMYN) are members of CenterLink. Because each member would have standing to sue in its own right, CenterLink has associational standing. *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1571 (11th Cir. 1991). Each member center has alleged concrete injuries as a result of the Law. OYA, Compass, and JASMYN all allege they have diverted significant resources from core programming to handle the increased mental health needs of LGBTQ+ youth because the Law has made their schools feel less welcoming and safe and caused them anxiety, injuries the centers expect to continue as long as the Law remains in effect. ECF 82 ¶¶ 119 (JASMYN), 121-123 (OYA), 124-26, 129 (Compass). Compass also has alleged that its communication with students has been hindered because teachers are now afraid to provide referrals because of the Law.[7] Also, its collaboration with SDPBC to develop the LGBTQ+ support guide and to provide trainings for staff relating to best practices for working with LGBTQ+ youth has been impeded as a result of the Law. ECF 82 ¶¶ 124, 127, 128. Likewise, JASMYN's collaboration with schools and teachers and its communication with them and with students was hindered by the Law. ECF 82 ¶¶ 113-18. These harms provide the

---

[7] Defendant SBPBC argues the Law's parental notification requirements are not arguably vague about referring students to Compass. ECF 113 at 20-21. SBPBC fails to consider that its own Policy 5.735, implementing the Law, which subjects employees to disciplinary action for "attempt[ing] to encourage" a student to withhold information from their parents in violation of the Law's parental notification provisions, could reasonably be interpreted by some teachers to mean they could face discipline for referring a student directly to an LGBTQ+ support center. *See* ECF 82 ¶ 41.

requisite injury in fact for the member centers, and therefore for CenterLink to sue on their behalf.

CenterLink also has organizational standing. Organizations suffer injury in fact when "the defendant's conduct [here, presumed enforcement of the Law,] perceptibly impairs the organization's ability to carry out its mission, including by causing drain on the organization's resources." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1287 (11th Cir. 2021) (internal quotation omitted). When an organization must divert resources from its own projects to counteract defendants' illegal actions, the organization is impaired and suffers injury in fact. ECF 81, at 11-12. Defendants' actions have impaired CenterLink's ability to carry out its mission and have forced resource diversion to educate and aid its members trying to work under a confusing Law and evolving enforcement, which is not an ordinary program cost. ECF 82 ¶¶ 102-104. This Court has recognized these allegations as sufficient to establish standing for CenterLink's past resource diversion. ECF 81 at 12. In the second amended complaint, Plaintiff CenterLink has alleged that as long as the Law remains in effect, especially given its vague language and uncertain scope, CenterLink expects it will continue to need to divert resources to aid members impacted by the Law, ECF 82 ¶¶ 102, 104, a fact that Defendants dismiss as "conclusory" despite CenterLink's knowledge of its own work, *see* ECF 109 at 18, but which must be taken as true for the purposes of their motions to dismiss.

### 2. Plaintiffs' Injuries Are Traceable to Defendant School Boards and Redressable by an Injunction Against Defendant School Boards

Plaintiffs' harms are traceable to Defendants because Defendants have authority to enforce the Law. On a challenge to a law's constitutionality, traceability and

redressability depend on whether the law contemplates enforcement by the defendant. *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201-02 (11th Cir. 2021); *Harrell*, 608 F.3d at 1257 (intent to enforce may be inferred by recent enactment of challenged law); *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21cv186-MW/MAF, 2022 U.S. Dist. LEXIS 60368, at *52 (N.D. Fla. Mar. 31, 2022) (injury traceable to Supervisor because "Florida law tasks the Supervisors with implementing the law"). It is undisputed that each Defendant has some manner of enforcement authority under the law, which is all that is required in a pre-enforcement facial challenge. *See* Fla. Stat. § 1001.42; *see also* Fla. Stat. §§ 1001.02-03, 1001.20, 1001.23, 1003.41; ECF 82 ¶¶ 17-21. Further, Defendants each have defended the law against legal challenges, which permits this Court to infer "an intent to enforce [the challenged statute]." *Wollschlaeger*, 848 F.3d at 1305 (quoting *Harrell*, 608 F.3d at 1257).

Defendants concede that Plaintiffs complain of harm due to the Law's "existence" independent of any enforcement Defendants may undertake, ECF 109 at 3, ECF 110 at 11, ECF 111 at 10, ECF 113 at 18, but fail to acknowledge that enforcement is presumed and unnecessary to a pre-enforcement facial challenge. Therefore, any arguments about what the School Board Defendants have or have not done is irrelevant to whether Plaintiffs' harms from the Law are traceable to the Defendants. *See* ECF 109 at 10, 20 (SBOC arguing alleged harm in response to existence of law not actual enforcement by SBOC); ECF 110 at 8-9 (SBDC arguing it has not enforced the law against CenterLink), ECF 111 at 10-11 (SBIRC arguing that alleged harm comes from the existence of the law and not any actions by SBIRC); ECF 113 at 7, 18-19 (SBPBC arguing harm just from existence of law not action of Palm Beach implementing law).

Here, Plaintiffs have alleged not only a credible threat of enforcement, a standard described as "quite forgiving," *Wollschlaeger*, 848 F.3d at 1305, but facts establishing that enforcement already has occurred. Simply put, Defendants cannot defeat standing simply by voluntarily applying a narrowing construction to the Law in their briefing, and by denying—contrary to the allegations in Plaintiffs' second amended complaint, which must be taken as true—that they are taking steps to implement it. The legislature, by inserting a private right of action, expressly contemplated enforcement by school districts of the law as written as of July 1, 2022. The Law gives parents tools to leverage enforcement of the law as written, including by providing powerful financial incentives, but parents are not positioned to directly enforce the Law absent the authority of the school districts to implement it. This is a practical difference that Plaintiffs have factored into their need to self-censor. *See e.g.*, ECF 82 ¶ 95. If Defendants wish their narrow interpretation to have force, that is reason to support the relief requested by Plaintiffs—not to oppose it.

Plaintiffs also have shown redressability, meaning "whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (cleaned up). A "substantial likelihood" of redress satisfies this prong. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 79 (1978). Plaintiffs' redress need not be total. *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018).

Here, an injunction would restore the *status quo ante*, when Plaintiffs did not self-censor or fear reprisal from government actors for protected expression. *See Support Working Animals, Inc.*, 8 F.4th at 1202–03 ("Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff

13

would obtain relief that directly redresses the injury suffered."). It would permit Plaintiff parents and students to engage in coming-out speech, and acknowledgement of their LGBTQ+ family members, knowing they would not be disciplined solely for divulging who they are, and that school districts would once again be free to protect Plaintiff students from bullying and stigmatization based on their LGBTQ+ identities. Relief would also at least partially redress CenterLink's injuries, including frustration of its mission and chill to its member centers' speech, e.g., ECF 82 ¶¶ 103, 104, 113, 129, and harm imposed by an increased demand for direct services at the centers as a result of reduced support in schools. ECF 82 ¶¶ 119, 123, 129. While such an order may not prevent *all* bullying, censorship, discipline, or other actions that could result in chilled speech, it would "provide at least partial redress," which is all that is required. *Honeyfund.com, Inc. v. DeSantis*, No. 4:22cv227-MW/MAF, 2022 WL 3486962, at *4 (N.D. Fla. Aug. 18, 2022) (granting injunctive relief against state defendants with enforcement authority even if others may also act in ways harmful to the plaintiff); *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (plaintiff had standing to sue even if only "a small part of the [total] injury [was] attributable to" the defendant).[8] Accordingly, all Plaintiffs have demonstrated standing.

---

[8] Defendants SBOC and SBPBC argue redressability is lacking because other state laws are an additional cause of some alleged harms, including removal of library books and canceled trainings. ECF 109 at 15 (citing Fla. Stat. § 1006.28); ECF 113 at 14-15 (same), ECF 113 at 19-20 (citing Fla. Stats. § 760.10(8),1000.05(4)). Neither law restricts sexual orientation and gender identity content. Furthermore, Defendants have specifically cited the Law as a reason for their actions. *See, e.g.* SBPBC Policy 8.12(7)(e) (restricting library materials for K-3 students "because HB 1557 (2022) prohibits such instruction"), available at https://go.boarddocs.com/fl/palmbeach/Board.nsf/goto?open&id=CMRMQE581128. Therefore, since redressability need not be total to be effective, Plaintiffs' have standing notwithstanding these other laws.

### B. Plaintiffs Have Properly Pled School Board Liability

Defendants SBOC, SBDC, and SBIRC argue Plaintiffs' fail to allege a municipal liability claim under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).[9] ECF 109 at 21-22; ECF 110 at 12-13, ECF 111 at 13-16. *Monell* specifically authorizes claims against local government units. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) ("*Monell* is a case about responsibility[, and] held that local government units could be made liable under § 1983 for deprivations of federal rights . . . ."). Plaintiffs' claims do not implicate *Monell's* concerns about respondeat superior liability. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479. A unit of local government, such as a school board, cannot stave off a § 1983 claim that seeks to enjoin a state law when that unit is directly responsible for implementing the law.

Here, Plaintiffs raise direct claims against the School Board Defendants based on their responsibility and authority to enforce the Law and the fact that they can implement an injunction against the Law. ECF 82 ¶¶ 17-21. Plaintiffs do not allege or raise issues of vicarious liability for the acts of an employee, despite identifying acts of various school districts to illustrate the ripeness of the action and the scope of the Law.[10] Defendants' *Monell* arguments are misplaced.

### C. Plaintiffs' Second Amended Complaint Is Not a Shotgun Pleading

---

[9] Defendant SBPBC does not make this argument. ECF 113.

[10] Moreover, each School Board Defendant has taken some district or board level action evidencing a policy, practice, or custom to implement the Law. *E.g.*, ECF 82 ¶ 40 (SBDC policy on parental notification), ¶ 42 (SDIRC policy and OCPS procedure to implement parental complaint mechanism under Law).

The "shotgun pleading" rule aims to save defendants and Courts from complaints that are so unclear that a defendant is unable to frame a responsive pleading. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 n.15 (11th Cir. 2015). "Shotgun" complaints "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The bar for surviving a challenge on grounds of shotgun pleadings is "relatively low." *Santana v. Telemundo Network Grp. LLC*, No. 6:20-cv-1157-WWB-LRH, 2021 WL 678556, at *2 (M.D. Fla. Feb. 22, 2021).

Here, only one of five Defendants, School Board of Orange County, argues that Plaintiffs' second amended complaint should be dismissed as a shotgun pleading. ECF 109 at 3-4. Unlike its peers, Orange County contends it cannot understand the complaint because it (1) contains "immaterial allegations 'not obviously connected to any particular cause of action," and (2) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." ECF 109 at 4. Neither of these is a basis to dismiss the second amended complaint because Plaintiffs have provided Defendant SBOC with adequate notice of the claims against it, and the shotgun pleading rule should not be used to force Plaintiffs to abandon or change their claims based on defendants' legal disputes with the merits of the Plaintiffs' claims. *Weiland*, 792 F.3d at 1325 ("A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." (quotation omitted).

16

### 1. Plaintiffs' Second Amended Complaint Does Not Assert Immaterial Allegations

The complaint does not contain "immaterial allegations" and certainly does not contain so many that Orange County, unlike the other Defendants, could not reasonably understand the nature and bases of Plaintiffs' claims. To the contrary, the allegations about which Orange County complains—statements about the "reasons for enactment" of the law, proposed but unadopted amendments, and actions by other school districts to implement the law—are directly relevant. Plaintiffs have asserted both facial and as-applied challenges to the Law and the legislative history is probative of its discriminatory purpose. *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) (even if a law is found facially neutral, it may violate equal protection if discrimination was a substantial or motivating fact in its enactment). Rejection of legislative amendments that would have regulated with narrower specificity are relevant to Plaintiffs' claims of unconstitutional vagueness. *See Reno v. Am. C.L. Union*, 521 U.S. 844, 871 n.37 (1997) (Congress's rejection of clarifying, limiting amendments relevant in holding statute unconstitutionally vague); *Wollschlaeger*, 848 F.3d at 1320 (government must regulate protected speech with narrow specificity). The actions of other school districts implementing the Law are also relevant to the Law's ambiguous scope and the objective reasonableness of Plaintiffs' self-censorship under the Law.

To the extent Plaintiffs allege facts that may not be directly actionable to provide context for their claims, such allegations do not create a "shotgun" pleading. To the contrary, a "[p]laintiff may plead facts that develop a full picture of her claim and are related to actionable conduct even where those instances of conduct might not be actionable themselves, and the inclusion of such information, even if immaterial, does not

necessitate dismissal." *Santana*, 2021 WL 678556, at *2.  Dismissal is appropriate only in egregious circumstances where complaints are "replete with conclusory, vague, or immaterial facts." *Bluhm v. Wyndham Vacation Ownership,* Inc., No. 6:19-cv-2300-WWB-LRH, 2021 WL 1979393, at *2 (M.D. Fla. Mar. 1, 2021). The complaint's length is appropriate to the number of parties and claims, the complexity of the issues, and contains details that have a clear relationship to the claims.

### 2. Plaintiffs' Second Amended Complaint Properly Identifies the Unlawful Actions of Each Defendant

The fact that multiple defendants are named in the same counts does not mean the pleading should be dismissed for lack of clarity. Each count states which plaintiffs are suing which defendant for that claim and specifically incorporates the relevant allegations as against each defendant and the common allegations relevant to all defendants. Plaintiffs challenge the constitutionality of the Law, both on its face and as applied, and it is inferred that all Defendants will enforce the entirety of the Law. *Harrell*, 608 F.3d at 1257. Therefore, it should be expected that many of Plaintiffs' allegations—even those that discuss actions of other counties—are relevant to all Defendants equally as evidence of the Law's scope and likely impact. Defendant SBOC's shotgun pleading argument should be rejected.

### D. Plaintiffs Have Stated a Claim for Relief Under All Counts.

A plaintiff need not provide "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the Court must assume that "all the allegations in a complaint are true (even if doubtful in fact)," and those facts must support a plausible right to relief, not a probable one, because such a motion precedes the opportunity for discovery. *Id.* at 555-56.

18

Defendants purport to argue that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted, but they offer almost no support for such an argument. Defendant SBOC merely "defers to" the State Attorney General for its argument, ECF 109 at 5, 12 n.9, 17 n.10, and Defendants SBPBC and SBIRC provide no argument at all. *See* ECF 113 at 2; ECF 111 at 12-13. Defendant SBDC, meanwhile, largely repeats its arguments on standing grounds, essentially claiming that Plaintiffs have not suffered any legally cognizable injury. *See* ECF 110 at 14-17. As discussed above, *supra* Section II(A)(1), Plaintiffs have pled more than sufficient facts to establish that they have been, or will be, injured by Defendants' enforcement of the Law.

Finally, the School Board Defendants do not argue that Plaintiffs' claims challenging the parental notification provisions of the Law fail either on the merits or on standing grounds. Plaintiffs have alleged these provisions are unconstitutionally vague and overbroad (*e.g.*, Doc. 82 ¶¶ 23, 24, 40 (vagueness of "well-being" and whether coming out requires notification), have impacted student referrals to CenterLink member centers (*id.* ¶ 127), and have caused discriminatory targeting of LGBTQ+ anti-bullying and support guidance for teachers and students (*id.* ¶¶ 38, 99, 116, 128). Plaintiffs also have alleged these provisions impact protected expression, including coming out speech and GSA associations. *See e.g.*, *id.* ¶ 117 (impact of notification requirements on GSA sponsorship and survival); ¶¶ 61, 68, 109, 119, 123 (injury resulting from loss of GSAs, including overflow demand on community centers).

Defendants SBOC, SBDC, and SBIRC fail to acknowledge Plaintiffs' challenge to these provisions at all. Although Defendant SBPBC acknowledges Plaintiffs' challenge, it never meaningfully engages with those claims. Because they have not presented any

legal argument to support a motion to dismiss Plaintiffs' claims based on the notification provisions of the Law, their Motions should be denied as to these claims.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the School Board Defendants' Motions to Dismiss.

Respectfully submitted this 31st day of January, 2023.

By: */s/ Debra Dandeneau*
**Debra Dandeneau, Esq.** (FBN 978360)
Baker McKenzie LLP
452 Fifth Avenue
New York, NY 10018
(212) 626-4100
debra.dandeneau@bakermckenzie.com

**Simone Chriss, Esq.** (FBN 124062)
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601
simone.chriss@southernlegal.org

**Kell L. Olson, Esq.**
(admitted *pro hac vice*)
Lambda Legal Defense
and Education Fund, Inc.
800 South Figueroa St, Ste 1260
Los Angeles, CA 90017
kolson@lambdalegal.org

**Jennifer Vail, Esq.**
(admitted *pro hac vice*)
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL 36104
jennifer.vail@splcenter.org

*On behalf of Plaintiffs and all Counsel for Plaintiffs*