**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JENNIFER COUSINS, MATTHEW
COUSINS, P.C., M.C., S.C., N.C., WILL
LARKINS, DAVID DINAN, VIKRANTH
REDDY GONGIDI, K.R.D., R.R.D. and
CENTERLINK, INC.,

        Plaintiffs,

v.                                         Case No.: 6:22-cv-1312-WWB-LHP

THE SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA, THE SCHOOL
BOARD OF INDIAN RIVER COUNTY,
FLORIDA, THE SCHOOL BOARD OF
DUVAL COUNTY, FLORIDA, THE
SCHOOL BOARD OF PALM BEACH
COUNTY, FLORIDA, THOMAS R.
GRADY, BEN GIBSON, MONESIA
BROWN, ESTHER BYRD, GRAZIE P.
CHRISTIE, RYAN PETTY and JOE
YORK,

        Defendants.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendant School Board of Orange County's

Motion to Dismiss (Doc. 109), Duval County School Board's Motion to Dismiss (Doc. 110),

Defendant School Board of Indian River County, Florida's Motion to Dismiss (Doc. 111),

and Defendant School Board of Palm Beach County, Florida's Motion to Dismiss (Doc.

113) and Plaintiffs' Response to School Board Defendants' Motions to Dismiss (Doc.

128).

## I.    BACKGROUND

Plaintiffs consist of a group of parents and their school age children that attend school in Orange and Indian River Counties (collectively, "**Parent and Student Plaintiffs**"), and a non-profit group, CenterLink, Inc. ("**CenterLink**"), that operates in Orange, Duval, and Palm Beach Counties. (Doc. 82, ¶¶ 13–16). In 2022, Florida enacted House Bill 1557, which took effect on July 1, 2022. (*Id.* ¶¶ 1, 22). As relevant to this dispute, the newly enacted provisions of section 1001.42, Florida Statutes, prohibit "[c]lassroom instruction by school personnel or third parties on sexual orientation or gender identity" for children in kindergarten through third grade, and provide that such instruction must be age and developmentally appropriate for children thereafter. (*Id.* ¶ 22 (quoting Fla. Stat. § 1001.42(8)(c)(3))). In addition, the law requires school boards to "adopt procedures for notifying a student's parent if there is a change in the student's services or monitoring related to the student's mental, emotional, or physical health or well-being and the school's ability to provide a safe and supportive learning environment for the student[,]" and bars school boards from implementing any procedures that prohibit school district personnel from notifying a parent regarding the same or "have the effect of encouraging a student to withhold from a parent such information[,]" and bans school district personnel from discouraging or prohibiting parental notification of and involvement in decisions regarding a student's mental, emotional, or physical health or well-being unless "a reasonably prudent person would believe that disclosure would result in abuse, abandonment, or neglect[.]" (*Id.* ¶ 23 (quoting Fla. Stat. § 1001.42(8)(c)(1)–(c)(2))). Defendants Thomas Grady, Ben Gibson, Monesia Brown, Esther Byrd, Grazie P. Christie, Ryan Petty, and Joe York ("**State Board Defendants**") are members of the Florida State

Board of Education, which is the head of the Florida Department of Education and is tasked with implementation and enforcement of the new law.  (*Id.* ¶ 17).  Defendants, the School Board of Orange County ("**Orange County**"), the School Board of Indian River County ("**Indian River County**"), the School Board of Duval County ("**Duval County**"), and the School Board of Palm Beach County ("**Palm Beach County**"), have enforcement authority within their respective jurisdictions under the new law.  (*Id.* ¶¶ 18–21).

The Parent and Student Plaintiffs allege that as a result of Orange and Indian River Counties' implementation or contemplated implementation of the new provisions of section 1001.42, certain books, materials, and school activities may become unavailable, their speech and that of others will be chilled, and schools will be unable to effectively respond to bullying.  (*Id.* ¶¶ 33, 36–38).  As support for these propositions, the Parent and Student Plaintiffs allege that Orange County has a duty to enforce the law, has or plans to remove certain books from schools, recommended that safe space stickers be removed from classrooms, and has failed to address bullying in their preferred manner on one occasion.  (*Id.* ¶¶ 54–55, 57–58, 66, 84).  With respect to Indian River County, the Parent and Student Plaintiffs allege that the County has a duty to enforce the law and is now reviewing a lesbian, gay, bisexual, transgender, queer, and questioning ("**LGBTQ+**") Administrative Resource Guide, which is currently unavailable.  (*Id.* ¶¶ 94, 99).

CenterLink is a non-profit organization that provides support for its members, which consist of LGBTQ+ community centers across the country, including in Orange, Duval, and Palm Beach Counties.  (*Id.* ¶¶ 16, 100).  CenterLink alleges that since the passage of the amendments to section 1001.42, it has spent a couple of hours a week responding to member inquiries regarding the law and has conducted seminars in Florida

on the law.  (*Id.* ¶ 102).  CenterLink alleges that some of its members work with schools to develop policies and procedures to prevent bullying and provide trainings in schools. (*Id.* ¶ 107).  As relevant to this litigation, CenterLink has member centers in Duval County and Palm Beach County that have historically worked with the school boards to provide trainings and to develop policies and procedures relating to LGBTQ+ issues.  (*Id.* ¶¶ 111, 128).  The centers in Duval County and Palm Beach County have also received student referrals from teachers and school board members in the past.  (*Id.* ¶¶ 112, 127). CenterLink alleges that these partnerships have been hindered due to the law.  (*Id.* ¶¶ 114, 118, 124).  CenterLink also has a member center in Orange County.  (*Id.* ¶ 121).

Plaintiffs filed the First Amended Complaint alleging claims against the County Defendants for violations of their First and Fourteenth Amendment rights.  (*See generally* Doc. 79).  On October 20, 2023, this Court dismissed the First Amended Complaint for, among other issues, Plaintiffs' failure to allege standing to pursue claims against the County Defendants.  (Doc. 81 at 10–26).  Nevertheless, because it was not clear that at least some of the pleading deficiencies could not be cured, the Court granted Plaintiffs leave to file an amended complaint.  (*Id.* at 27–28).  Plaintiffs filed the Second Amended Complaint asserting claims for chilled and prohibited speech in violation of the First Amendment (Count I), violation of the right to receive information under the First Amendment (Count II), overbreadth (Count III), deprivation of due process under the Fourteenth Amendment (Count IV), and deprivation of equal protection under the Fourteenth Amendment (Count V).  (*See generally* Doc. 82).  The County Defendants have moved to dismiss for lack of standing and failure to state a claim.

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

A party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).  "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at *2 (M.D. Fla. Jan. 31, 2008).

### B.   Failure to State a Claim

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir.

2009).   Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

### A.    Shotgun Pleading

As an initial matter, Orange County argues that the Second Amended Complaint remains a shotgun pleading because Plaintiffs failed to remove factual allegations that this Court explicitly stated were unnecessary and continue to bring multiple claims against multiple Defendants in each count.   In response, Plaintiffs argue that each of the allegations are directly relevant to proving their claims and that they can sue multiple Defendants in each count because the Second Amended Complaint clearly alleges the purported basis for each Defendants' liability.   With respect to the numerous inconsequential allegations, the Court agrees that Plaintiffs have failed to correct the pleading deficiency noted in the October 20, 2022 Order.  To be clear, Plaintiffs include several allegations that might be relevant to ultimately proving their claims, but that do nothing more than create unnecessary clutter at the pleading stage. Plaintiffs also continue to include numerous allegations that appear to be wholly immaterial.  Even if

such allegations are not immaterial, the complaint is not the proper place for legal argument or posturing.

Additionally, Plaintiffs still fail to adequately separate each claim for relief into separate counts.  For example, in Count I Plaintiffs allege that "the Law" violates the First Amendment, both facially and as applied, but, as this Court already explained, Plaintiffs' allegations challenge "the Law" without specifying what provision or provisions specifically have caused the alleged constitutional violations.   Simply put, Plaintiffs' lengthy incorporation of the legislative history, legal arguments, unnecessary narrative regarding the motivation of the legislature and events that have no logical connection to their claims aside from temporal proximity, and repeated discussion of three very different legal requirements under the law without any clear indication as to how, or even if, some of those provisions are being challenged, renders the Second Amended Complaint still in violation of federal pleading standards.  *See, e.g.*, *Flores v. United States*, No. 3:22-cv-70, 2022 WL 204247, at *3 (M.D. Fla. Jan. 24, 2022); *Whispering Pines Mobile Homeowners' Ass'n, Inc. v. Wallach*, No. 6:19-cv-487-Orl, 2020 WL 9455604, at *2–3 (M.D. Fla. Apr. 7, 2020).  While an improvement, the Second Amended Complaint remains a shotgun pleading subject to dismissal.  Nevertheless, to the extent the Court can decipher the basis of Plaintiffs' constitutional challenges, it will address the County Defendants' arguments as to standing and failure to state a claim.

**B.    Standing**

"When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then

decide the 12(b)(6) motion." *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984). Thus, because the County Defendants have raised both jurisdictional and substantive arguments, the Court will first consider its jurisdiction over Plaintiffs' claims.

"The Constitution limits the jurisdiction of the federal courts to actual cases or controversies." *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. art. III, § 2). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Id.* at 1365–66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The foremost standing requirement is injury in fact. An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).

　　　　　　*1.　　CenterLink*

As set forth in this Court's October 20, 2022 Order, CenterLink brings claims against Duval, Orange, and Palm Beach Counties on its own behalf and on behalf of its affected member centers, the Jacksonville Area Sexual Minority Youth Network ("**JASMYN**"), the Orlando Youth Alliance ("**OYA**"), and Compass Community Center ("**Compass**").   (Doc. 81 at 11).   Each County Defendant has moved to dismiss CenterLink's claims for lack of standing.  "An organization can establish standing in two ways: (1) through its members (i.e., associational standing) and (2) through its own injury in fact that satisfies the traceability and redressability elements."  *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022).  "An organization has standing to sue on its own behalf if it meets the standing requirements applicable to individuals."  *Women's Emergency Network v. Bush*, 323 F.3d 937, 948 n.13 (11th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  "An organization has standing to enforce the rights of its members 'when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

In the Response, CenterLink argues that it has both individual and associational standing.  As to associational standing, CenterLink argues that JASMYN, OYA, and Compass would have standing in their own right to sue the respective counties in which

they operate.  First, CenterLink argues that JASMYN has been injured because the law has prevented it from "fully communicating with students, teachers, and school officials to the extent it has in the past" and because it "has had to reallocate staff and program resources to increase online support and develop satellite locations for student support services."  (Doc. 82, ¶¶ 113–119).  With respect to the latter, "[a]n organization suffers actual harm 'if the defendant's illegal acts impair [the organization's] ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts.'" *City of S. Mia. v. Governor of Fla.*, 65 F.4th 631, 638 (11th Cir. 2023) (quoting *Fla. State Conf. of N.A.A.C.P.*, 522 F.3d at 1165).  Thus, to show injury under a diversion of resources theory, an organization must explain what activities it has been forced to divert resources away from to spend those resources combatting the allegedly unlawful actions of the defendants.  *See Jacobson*, 974 F.3d at 1250; *see also Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012) (holding that the organizational plaintiff showed standing where it presented evidence that the increase in responses to member inquiries and education regarding the law caused it to cancel citizenship classes to focus on combating the effects of the bill).  Although this case is at the pleading stage, CenterLink must still offer more than vague and conclusory allegations of "reallocation" to properly allege a diversion of resources injury to JASMYN. The Second Amended Complaint—and the Affidavit submitted by JASMYN's CEO—fails to allege where resources were diverted from or how the actions taken relate to counteracting the effects of the law on JASMYN's members.  Nor has CenterLink argued or shown that a mere change in operational procedures without impacting services offered to members is an injury sufficient to confer standing.  Thus, CenterLink has not

adequately alleged a diversion of resources injury to JASMYN.  *See Nicholas v. Fulton Cnty. Sch. Dist.*, No. 1:20-cv-3688, 2022 WL 2276900, at *16 & n.14 (N.D. Ga. June 23, 2022); *Walters v. Kemp*, No. 1:20-CV-1624, 2020 WL 9073550, at *6 (N.D. Ga. May 5, 2020); *cf. Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1292 (N.D. Ga. 2020).

Alternatively, CenterLink alleges that JASMYN has suffered an injury because it has only been able to participate in one meeting with Duval County since the law's effective date—because such meetings have been cancelled or held only sporadically— and was not explicitly invited to one meeting.  CenterLink, however, fails to make anything more than conclusory allegations that the lack of meetings is related to enforcement efforts by Duval County or that JASMYN would have any right to force Duval County to hold such meetings but for the law's existence.  (Doc. 81 at 16–17).  In fact, any argument that the law prohibits Duval County from holding such meetings is belied by CenterLink's allegation that meetings were held in July and September 2022, after the new law went into effect.  (Doc. 82, ¶ 114).

Further, Duval County has proposed changes to a publication that JASMYN contributed to in the past and is not fully facilitating communications between JASMYN and students and teachers in some of the ways that it used to.  With respect to the publication, CenterLink specifically alleges that this could result in an injury to the students but fails to connect the shortening of the publication to any harm to JASMYN that is concrete and particularized.[1]  *Cf. Gardner v. Mutz*, 962 F.3d 1329, 1341–42 (11th Cir.

---

[1] While this might form a basis to argue that JASMYN would have associational standing on behalf of its members, which include students in Duval County, CenterLink has not alleged or argued such a basis for standing and, therefore, the Court will not

2020).   Moreover, as Duval County points out and CenterLink does not dispute, the publication, which is created and disseminated by Duval County, is almost certainly government speech and JASMYN has no constitutional right to dictate the contents of government speech.   *See, e.g.*, *Leake v. Drinkard*, 14 F.4th 1242, 1247–48 (11th Cir. 2021); *Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070, 1074–79 (11th Cir. 2015).

As to communications with students and teachers, CenterLink has not alleged any action taken by Duval County to limit JASMYN's communications.   At best, CenterLink alleges that Duval County has, following the effective date of the law, ceased making additional efforts to facilitate communications.   (Doc. 82, ¶¶ 114, 117–118).   But CenterLink has not alleged that JASMYN is entitled to receive such support from Duval County or how the failure to provide JASMYN with its preferred method of contact with teachers and students is a violation of JASMYN's constitutional rights or a result of any enforcement effort by Duval County.

Additionally, CenterLink fails to allege or argue how such harms would be redressed by a favorable ruling because it has not directed this Court to any allegation that Duval County has any constitutional obligation to facilitate JASMYN's communications with students and teachers or to holding meetings with JASMYN on topics that JASMYN has an interest in discussing with the County.   *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46–48 (1983); *M.N.C. of Hinesville, Inc. v. U.S. Dep't of Defense*, 791 F.2d 1466, 1472 (11th Cir. 1986).   Therefore, CenterLink has not established associational standing on behalf of JASMYN.

---

consider if JASMYN has standing on behalf of its members or if such standing would confer standing on CenterLink.

Turning to OYA, which is CenterLink's Orange County member center, CenterLink argues injury based on a diversion of resources. In the Second Amended Complaint, CenterLink alleges that attendance at OYA's peer-to-peer counseling sessions has doubled and OYA has expended approximately $6,250 to advertise the availability of its services, which CenterLink alleges has diverted funding away from OYA's social, educational, and recreational activities and assistance with scholarships and career exploration. (Doc. 82, ¶¶ 121–122). "To prove injury in fact based on an organization's diversion of resources to protect individuals from harm, the organizational plaintiff must prove *both* that it has diverted its resources *and* that the injury to the identifiable community that the organization seeks to protect is itself a legally cognizable Article III injury that is closely connected to the diversion." *City of S. Mia.*, 65 F.4th at 638–39.

Even assuming that CenterLink's vague and conclusory allegations regarding how the funds would have otherwise been used are sufficient, CenterLink's pleading and Response, and the Declaration of OYA's CEO (Doc. 103-5), are silent as to what harm OYA is seeking to counteract and how its diversion of resources is aimed at doing so. However, because CenterLink alleges that many of OYA's members are students in Orange County public schools, the Court will assume its members suffer the same injury to support standing as the named Orange County students in this case argue that they have suffered, i.e., chilled speech and the removal of certain educational resources in schools. (*See* Doc. 128 at 3–8). Even if these are sufficiently concrete Article III injuries, CenterLink still fails to show any logical connection between increased expenditure on mental health counseling—and advertising the existence of such services—and combating the alleged injuries. Simply put, the Court fails to see how providing additional

mental health counseling combats the lack of education and educational resources on sexual orientation and gender identity in schools.  *See El Paso Cnty. v. Trump*, 982 F.3d 332, 344 (5th Cir. 2020) (holding that an organization lacked standing where it failed to "provide any details on how the organization is helping its members respond to the harmful impacts of" the challenged action, that its expenditures were outside the "general ambit of its normal operations[,]" and the additional presentations were to address fear as result of government action as opposed to the impacts of the action itself); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) ("[W]e ask, first, whether the agency's action or omission to act injured the [organization's] interest and, second, whether the organization used its resources to counteract that harm." (quotation omitted)); *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 76–77 (3d Cir. 1998) (holding that the organization failed to establish standing under a diversion of resources theory where it did not show "any connection" between the alleged harm and its expenditures); *see also Tex. State LULAC v. Elfant*, 52 F.4th 248, 253–55 (5th Cir. 2022).

Moreover, as this Court pointed out in the October 20, 2022 Order, CenterLink has failed to show that OYA's injury is traceable to the County Defendants.  (Doc. 81 at 13–14).  In their Response, Plaintiffs make the sweeping argument that they "have alleged not only a credible threat of enforcement, . . . but facts establishing that enforcement already has occurred."  (Doc. 128 at 13).  Plaintiffs fail, however, to direct this Court to any such allegations with respect to CenterLink or OYA.  It also appears that Plaintiffs' argument is directed at the harm of chilled speech, but that is not the harm that CenterLink is alleging on OYA's behalf in this case.  The Court sees no allegation in the Second

Amended Complaint that would tie OYA's expenditure of resources to combat fear of the law to any enforcement taken or contemplated by the County Defendants.   Likewise, CenterLink does not allege that OYA would be subject to enforcement of the law's restrictions with respect to speech or that OYA's speech is likely to be chilled by enforcement of the law.   Instead, the alleged harm suffered by OYA is the result of the existence of the law itself, which is not sufficient to confer standing.  *See Supporting Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1203–05 (11th Cir. 2021); *Wollschlaeger v. Governor*, 848 F.3d 1293, 1304 (11th Cir. 2017); *Harriet Tubman Freedom Fighters Corp. v. Lee*, No. 4:21cv242, 2021 WL 7083360, at *8 (N.D. Fla. Oct. 8, 2021).

Finally, CenterLink has failed to provide sufficient allegations to explain how OYA's diversion of resources injury would be redressable by a favorable ruling in this lawsuit. CenterLink argues that OYA's diversion of resources could be partially redressed because "OYA anticipates that demand for its support services would decrease because safe spaces at schools would be restored and provide additional support for those youth as they have in the past."  (Doc. 82, ¶ 123).  While the relief sought need not be complete, to satisfy the redressability requirement "a plaintiff needs to show that it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023) (quotation omitted).  At the pleading stage this requires that the plaintiff "must plausibly allege that a decision in his favor would significant[ly] increase . . . the likelihood that [he] would obtain relief that directly redresses the injury suffered."  *Id.* (quotation omitted).  Here, even if the Court were to enjoin enforcement of the law, there is no evidence or allegation

that schools would be required or inclined to restore safe spaces in schools or provide support services for LGBTQ+ students.  There is also no indication that students would return to using those services if available or that, even if they did, they would cease using the services provided by OYA in addition to any service offered by their schools.  Simply put, CenterLink's argument rests on several unsupported and unexplained assumptions that all seem, at best, equally likely to occur and fails to plausibly allege that an injunction would significantly increase the likelihood that OYA's financial injury would be redressed. *See Levine v. Bellsouth Corp.*, 302 F. Supp. 2d 1358, 1367 & n.6 (S.D. Fla. 2004).  Thus, CenterLink has not established standing through OYA.

Lastly, CenterLink argues that it has standing on behalf of Compass to support its claims against Palm Beach County.  First, CenterLink alleges that Compass has had to divert resources away from various events and assisting families experiencing food insecurity "to address the increased need for mental health services among the youth it serves[.]"  (Doc. 82, ¶¶ 124–126).  CenterLink further alleges that "[i]f the Law were enjoined, Compass anticipates that school staff would resume student support and referrals to Compass for supplemental support and programming as they did before the law was in effect, allowing Compass to serve youth as it has in the past and to reallocate its diverted resources back to its core programs."  (*Id.* ¶ 129).  CenterLink's arguments with respect to Compass's diversion of resources fair no better than those raised on behalf of OYA.  Specifically, there are no allegations or arguments as to how any increased expenditure on the provision of mental health services to members is connected to alleged constitutional injuries to Compass's members or is traceable to any enforcement contemplated or that could be contemplated by Palm Beach County, or how a favorable

ruling in this case would plausibly significantly increase the likelihood that Compass's financial injury would be even partially redressed.

CenterLink also argues that Compass has been injured by the decrease in teacher referrals because teachers do not feel comfortable making referrals "in light of the Law's vague language," and its collaboration with Palm Beach County has been impeded by the cancellation of diversity and inclusion trainings for teachers and the revision of the County's LGBTQ+ Critical Support Guide.  (*Id.* ¶¶ 124, 127–128).[2]  With respect to the support guide, as stated above, CenterLink fails to connect the shortening of the publication to any harm to Compass that is concrete and particularized and, because it is likely government speech, Compass has no legal right to dictate its contents.  Likewise, CenterLink does not allege any constitutional right to hold or participate in such meetings, does not allege what provision or provisions of the law arguably apply to Compass or prohibit it from offering or performing such trainings for teachers—who are clearly not students—, does not allege that it has ever even offered such meetings or trainings in connection with Palm Beach County, has failed to allege that any meetings or trainings were cancelled as a result of enforcement efforts by Palm Beach County, and also does not make anything more than speculative assumptions that Palm Beach County would participate or resume such trainings if the law were enjoined.  Finally, as to student referrals, although CenterLink makes the conclusory allegation that teachers are afraid to

---

[2] The Second Amended Complaint also makes allegations regarding Palm Beach County's removal of certain textbooks and lesson plans from its schools, but it is unclear how the alteration of school instruction would injure Compass, which is not a student, and is not relied on in Plaintiffs' Response to support CenterLink's standing argument.  While such actions might injure Compass's members, CenterLink has not sought standing vis-à-vis Compass's members.  *See N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 9–10 (1988).

make referrals because Palm Beach County has informed them that they could lose their license for failure to comply with the law, this still fails to show what right Compass has to receive such referrals or offer more than speculation that a favorable ruling would redress this harm, which is contingent on the actions of third-parties not before this Court. Accordingly, CenterLink has also failed to adequately allege standing on behalf of Compass and, therefore, has not sufficiently shown that it has associational standing in this case.

With respect to individual standing, CenterLink again argues that it has been injured by a diversion of resources.  In the Second Amended Complaint, CenterLink alleges that from the law's passage until its effective date, it expended roughly four to eight hours a week responding to inquiries from its twenty-seven Florida member centers regarding the law and since July 1, 2022, it has spent "a couple of hours per week responding to member inquiries" including from JASMYN, OYA, and Compass.  (Doc. 82, ¶ 102).  Additionally, it has conducted two or three seminars for its Florida members since July 1, 2022.  (*Id.*).  CenterLink "anticipates that these activities will be ongoing as long as the Law is enforceable."  (*Id.*).  As CenterLink notes, in the October 20, 2022 Order, the Court found CenterLink's allegations were "likely sufficient to allege an injury in fact for past harms."  (Doc. 81 at 12).  From this, CenterLink argues that its conclusory allegation that it will continue to suffer harm indefinitely because of the law is sufficient to allege standing for its prospective relief claims.

The Eleventh Circuit's holding in *City of South Miami* brings this Court's prior ruling as to injury squarely into question.  Although the Court previously found CenterLink's diversion allegations sufficient at the pleading stage with respect to past harms, the Court

did not consider if CenterLink had alleged "*both* that it has diverted its resources *and* that the injury to the identifiable community that the organization seeks to protect is itself a legally cognizable Article III injury that is closely connected to the diversion." *City of S. Mia.*, 65 F.4th at 638–39. Rather, the Court only considered if CenterLink had alleged that it diverted resources. Here, even if CenterLink's diversion allegations are sufficient, the identifiable community that it seeks to protect is its member centers, which, as set forth above, lack a legally cognizable Article III injury. Thus, CenterLink has not established that it has suffered an injury sufficient to support standing against the County Defendants. Therefore, because CenterLink has failed to sufficiently allege either organizational or associational standing with respect to the County Defendants, its claims against such Defendants will be dismissed.

2.    *Parent and Student Plaintiffs*

David Dinan and Vik Gongidi bring claims against Indian River County on their own behalf and on behalf of their minor children, R.R.D. and K.R.D., who were third and fourth grade students, respectively, in the Indian River County public school system. (Doc. 82, ¶¶ 15, 91). Jennifer and Matthew Cousins bring claims against Orange County on their own behalf and on behalf of their children, N.C., S.C., M.C., and P.C., who attend public schools in the Orange County public school system and are in the ninth, seventh, third, and first grades. (*Id.* ¶¶ 13, 52). Will Larkins is a senior at a public high school in Orange County and brings claims against Orange County. (*Id.* ¶¶ 14, 70).

The Parent and Student Plaintiffs bring claims against Indian River County and Orange County for chilled speech, overbreadth, vagueness, and violations of their equal protection rights. (*Id.* ¶¶ 132–134, 160–162, 168–170, 181–183). In addition, the

Students bring a claim for violation of their right to receive ideas.  (*Id.* ¶ 151–153).  Because Plaintiffs must prove standing for each claim they assert and each form of relief sought, the Court will discuss each count separately.  *See Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1317 (11th Cir. 2021); *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356–57 (11th Cir. 2021).

With respect to Count I, Plaintiffs allege that the law impermissibly chills their speech in violation of the First Amendment.  "[T]o determine whether a First Amendment plaintiff has standing, we simply ask whether the operation or enforcement of the government policy would cause a reasonable would-be speaker to self-censor[ ]—even where the policy fall[s] short of a direct prohibition against the exercise of First Amendment rights[.]"  *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (quotations omitted).  "The fundamental question . . . is whether the challenged policy 'objectively chills' protected expression."  *Id.*  To the extent that Plaintiffs are seeking prospective relief, they "must show a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future."  *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation omitted).

In the Response, Dinan and Gongidi direct the Court to paragraphs ninety-two through ninety-five as evidence of their injury.  Therein, they allege that they censor their and their children's appearance and speech at school events to avoid topics that other "parents that could threaten to sue the school" might consider inappropriate.  (Doc. 82, ¶ 95).  However, as this Court already explained in the October 20, 2022 Order, Plaintiffs have failed to provide any legal authority or argument that lead a reasonable person to believe that their choice of attire or personal comments made at a school function would

run afoul of the law and it is without question that the law does not grant any right for one parent to sue another parent for speech.  (*See* Doc. 81 at 22).  To the extent a disgruntled parent might sue the school in response to Plaintiffs' conduct, Plaintiffs fail to explain how that would be an injury to them, as opposed to the school district.  Thus, this allegation is insufficient to establish an injury in fact under Count I.  Because this is the only alleged injury suffered by Gongidi, his claim must be dismissed for lack of standing.

Dinan alleges that he censored himself when acting as a chaperone on K.R.D.'s October 2022 field trip because he was concerned that mention or discussion of his husband or family could have been considered classroom instruction by a third-party.  (*Id.* ¶ 93).  With respect to K.R.D. and R.R.D., Plaintiffs allege that they are unclear on "how much detail they [can] put into family-related assignments.  (*Id.* ¶ 94).  However, these allegations do not vary significantly from those alleged in the First Amended Complaint, which the Court found were too vague and conclusory to support standing.  (*See* Doc. 79, ¶¶ 75–77; Doc. 81 at 21–22).  The allegations in the Second Amended Complaint fair no better.  While Dinan felt his speech was chilled when he was acting as a chaperone, Plaintiffs still fail to offer any argument as to how a reasonable person would have objectively believed that mentioning his same-sex spouse while acting as a chaperone would constitute instruction on sexual orientation or gender identity.  Similarly, the vague reference to "family-related assignments" falls short of explaining how the law could arguably operate as to these assignments, including if they are oral presentations made before the class or simply written assignment turned into the teacher, which no reasonably objective person would believe was subject to censorship under the law.  Instead, Plaintiffs only make the broad assertion that these constitute an injury without

further elaboration.  (Doc. 128 at 8; *see also* Doc. 103 at 7).  As the party seeking to invoke federal jurisdiction, Plaintiffs must do more.  *See Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1228 (11th Cir. 2019) ("The party invoking federal jurisdiction bears the burden of establishing standing." (citing *Lujan*, 504 U.S. at 561)); *Dermer v. Mia.-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("[A] plaintiff still must demonstrate an actual and well-founded fear that the law will be enforced against [him][.]" (quotation omitted)).  Therefore, the Court also finds that Dinan, K.R.D., and R.R.D. have failed to allege a cognizable injury as to Count I.

Turning to the Orange County Plaintiffs, although Matthew Cousins alleges a general desire to "speak freely about [his] family," Matthew Cousins provides no specific allegation that would demonstrate that he has a well-founded fear that he will run afoul of the law.  (Doc. 82, ¶ 55).  There are no allegations that Matthew Cousins wishes or intended to engage in speech that is arguably chilled.  Similarly, the Second Amended Complaint fails to allege that N.C. wishes to engage in any particular speech at school, let alone speech that could reasonably fall within the scope of the law's prohibitions. Thus, Matthew Cousins and N.C. have not alleged an injury with respect to Count I.

With respect to S.C., who identifies as non-binary, Plaintiffs allege that S.C. will not be able to ask others to use S.C.'s preferred pronouns or to discuss S.C.'s gender identity with friends, classmates, teachers, and others.  (*Id.* ¶ 62).  However, such vague and generalized allegations of a desire to engage in speech fail to provide the Court with adequate information to determine if the speech that S.C. wishes to engage in is arguably prohibited by the law.  For example, a simple discussion in the hallway or at lunch among S.C.'s peers could not reasonably be construed as prohibited by the law, but a

presentation to the class might be.  Without sufficient factual allegations regarding S.C.'s desired speech, it is not clear that S.C. has alleged an injury as to Count I and S.C.'s claim must also be dismissed.

M.C. and P.C. allege that they are afraid "they will get in trouble for speaking about [S.C.] in class and explaining their sibling's identity and pronouns," and have a general apprehension about "talking about their non-binary sibling in classroom settings."  (*Id.* ¶¶ 62, 69).  Plaintiffs also allege a concern that M.C. and P.C. will not be able to complete family tree and other family related assignments.  (*Id.* ¶ 63).  With respect to the latter, as discussed above, a vague reference to an assignment without more is insufficient.  Nevertheless, the Court finds that it is at least arguable that an explanation of a non-binary sibling's identity and pronouns during instructional time in the classroom falls within the purview of the law.  Therefore, M.C. and P.C. have alleged an injury with respect to Count I.  Likewise, Jennifer Cousins provides a specific factual allegation that she wishes to read a book discussing the history of a prominent gay rights activist and his contribution to gay pride during "Teach-In Week[,]" when parents are invited to read books to students.  (*Id.* ¶ 56).[3]  Again, although lacking in detail, taking the allegation in the light most favorable to Plaintiffs, this at least arguably falls within the prohibitions set forth in the challenged law.  Thus, Jennifer Cousins has also alleged injury as to Count I.

With respect to traceability, Plaintiffs argue that their harms are traceable to Orange County because it has enforcement authority under the law.  Plaintiffs argue that their claims are redressable because "an injunction would restore the *status quo ante*,"

---

[3] Although Plaintiffs fail to cite this allegation in support of their injury arguments, in an abundance of caution, the Court will consider this allegation with respect to Jennifer Cousins's standing.

and remove the chilling effect on Plaintiffs' speech.   "To establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing the law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'" *Dream Defs. v. Governor of the State of Fla.*, 57 F.4th 879, 888–89 (11th Cir. 2023) (quoting *Support Working Animals*, 8 F.4th at 1201).   There is no dispute that Orange County has the authority to enforce the law within its jurisdiction or that it has taken steps to do so.   Furthermore, with respect to the students, because the alleged injury is the fear to speak in the classroom where they would likely have the right to do so, the Court finds that an injunction against the enforcement of the law would likely provide at least partial redress.   At this stage in the proceedings, the Court finds M.C. and P.C.'s allegations sufficient to establish standing as to Count I.

However, the Court does not find that Jennifer Cousins has sufficiently established traceability and redressability as to Count I.   To be clear, Jennifer Cousins fails to allege sufficient facts from which this Court can determine that absent the operation of the law she would have been permitted to read the book she wanted to read to the class.   The Second Amended Complaint only provides vague allegations regarding what is permissible material for "Teach-In Week[,]" but it does not appear that the book she seeks to read would fall within any of the specified categories of "careers," "educational experience[s]," or "favorite vacation, hobby, or teacher[.]"   (Doc. 82, ¶ 56; *see also* Doc. 103-1, ¶ 10 ("Volunteers can read a book; share an educational experience; give students a window into their career; or talk about a favorite vacation, hobby, or even a special teacher who touched their life.")).   It is also unclear if parents are required to get prior

approval and, if so, if that comes from the County, the schools, or individual teachers. Thus, as alleged it is entirely too speculative, and likely dependent on the actions and decisions of persons not before this Court, that the harm was caused by Orange County's enforcement authority or would be redressed by a favorable outcome in this litigation. Jennifer Cousins's claim will also be dismissed.

Finally, Will Larkins alleges that he wishes "to engage in debate and discourse with his teachers and peers about critical moments in United States history that include LGBTQ+ individuals or issues[,]" to speak about the LGBTQ+ community and advocate for LGBTQ+ rights, to offer a presentation on the Stonewall Uprising in class, and "to acknowledge to other students, to teachers, and to his community that he is queer." (Doc. 82, ¶¶ 73, 75, 82, 88). However, at the time of filing, Larkins was a senior at Winter Park High School. (*Id.* ¶ 70). The 2022–23 school year has now ended and Larkins has, therefore, presumably graduated from high school and is no longer a student in the Orange County public school system. As this Court previously cautioned Plaintiffs, "claims by students against educational institutions, at least to the extent they seek declaratory and injunctive relief, are often moot once a student graduates because he or she will no longer be subject to the school action or policy challenged in the litigation." *Lambert v. Bd. of Trs. of Univ. of Ala.*, No. 2:18-cv-1112, 2019 WL 339178, at *6 (N.D. Ala. Jan. 28, 2019) (collecting cases). Here, although Plaintiffs seek nominal and compensatory damages in the wherefore clause, they fail to address such relief in their Response—or in their Second Motion for Preliminary Injunction (Doc. 103 at 12–13)—or explain how it confers standing in this case. Thus, because Plaintiffs have failed to address Larkins's standing to seek nominal or compensatory damages, and his

graduation appears to render any request for declaratory or injunctive relief moot, the Court finds that Larkins has failed to establish standing on this basis alone.

However, even if Larkins did not in fact timely graduate, he has still failed to adequately allege standing.  First, to the extent Larkins makes generalized allegations regarding his desire to engage in discussions and speech concerning the LGBTQ+ community, his allegations are too vague and conclusory to permit this Court to determine that such speech arguably falls within the purview of the law.  Likewise, it is not clear how a presentation on the facts of a historical event—even one involving gay rights—would constitute classroom instruction on sexual orientation or gender identity and Larkins has failed to specifically address this issue.  Nevertheless, even if the desired presentation arguably fell within the law's prohibitions, Larkins has also failed to allege that absent the law he would have been permitted to make such a presentation, which turns entirely on the curriculum set by his specific teachers and those educators' decisions to allow or disallow students to offer instruction on topics of interest to them.  *See Garcia-Bengochea*, 57 F.4th at 927; *Jacobson*, 974 F.3d at 1254–55; *Beatty v. U.S. Food & Drug Admin.*, 12 F. Supp. 2d 1339, 1345 (S.D. Ga. 1997) (citing *Lujan*, 504 U.S. at 562).  In fact, Larkins specifically alleges that he was disciplined for making a similar presentation before the law went into effect.  (Doc. 82, ¶¶ 80–81).  Any redress then is both speculative and based entirely on the actions of third parties not before the Court.  Therefore, Larkins has also not established standing to assert his claim in Count I.

In Count II, the Student Plaintiffs allege claims for violations of their First Amendment right to receive information and ideas.  In support of Count II, Plaintiffs direct this Court to the Student Plaintiffs' desire to access certain books in school.  However,

two of the paragraphs cited reference only the parents' desire for the access to books but do not allege that any of the Student Plaintiffs have sought out the materials.  The only student that has directly alleged a desire to access books is N.C.  (Doc. 82, ¶ 59).  Assuming that the lack of access to books is a sufficient injury, N.C.'s claim still suffers from, at the very least, a redressability problem.  To be clear, even assuming that the books that N.C. wants to read were available to him before the enactment of the new provisions of the law and have been removed in response to the law—allegations that are largely lacking in the Second Amended Complaint—, Plaintiffs have not alleged or argued that if the Court were to enjoin the law that the individual teachers and schools would resume, or begin, offering the books that N.C. wishes to read.  Thus, this Court's ability to redress N.C.'s injury is speculative and contingent on the actions of persons not before the Court.

Plaintiffs also state, without elaboration, that the Student Plaintiffs have been harmed by the "schools' ability to respond to bullying and slurs."  (Doc. 128 at 8).  First, insofar as Plaintiffs cite allegations of bullying by other students, as this Court has already explained, this is not a cognizable injury and, even if it was, it is neither traceable to the enforcement of the law nor redressable by an injunction against the law.  Otherwise, Plaintiffs have not alleged that schools have not addressed bullying based on a student's LGBTQ+ identity, only that they do not believe that the interventions have been "effective[]" or "reasonably supportive[.]"  (Doc. 82, ¶¶ 98–99).  But Plaintiffs fail to direct this Court to any legal authority, or even argument, that the First Amendment entitles them to a specific intervention by the school or that absent the law their schools and teachers would categorically respond effectively and in a supportive manner to every

incident of bullying.  Finally, to the extent the Student Plaintiffs complain that Duval County and Palm Beach County have rescinded or altered LGBTQ+ support guides, none of the students attend school in these counties and, therefore, cannot be injured by any changes to their guidance.  Even if they could allege an injury based on changes to the policies and manuals, they have failed to explain how any injunction against enforcement of the law would cause the schools to restore the prior versions of those documents or to otherwise make them available.  Count II will be dismissed in its entirety.

As to Count III, Plaintiffs allege a violation of the First Amendment overbreadth doctrine.  In their Response, Plaintiffs argue, in a footnote, that because Defendants failed to specifically address standing under the overbreadth doctrine, their Motions must be denied as to Count III.  (Doc. 128 at 5 n.1).  Nevertheless, Plaintiffs still have the burden to establish standing as to each claim and, aside from generalized citation to part of the legal standard to be applied in an overbreadth case, Plaintiffs largely ignore Count III and fail to specifically argue their standing to assert that claim.  On this basis alone, Count III can and will be dismissed.  *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1270 (11th Cir. 2006) ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing[.]"); *Stardust, 3007 LLC v. City of Brookhaven*, No. 1:14-CV-03534, 2016 WL 11544441, at *19 (N.D. Ga. Sept. 29, 2016).[4]

---

[4] Even if Plaintiffs had properly addressed standing under Count III, "[t]he overbreadth doctrine does not . . . because it may not, waive the Article III requirement that the plaintiff have suffered a real *injury in fact* as to a challenged provision of an ordinance."  *Maverick Media Grp., Inc. v. Hillsborough Cnty.*, 528 F.3d 817, 822 (11th Cir. 2008).  As set forth above, only P.C. and M.C. have sufficiently alleged a First Amendment injury in this case and so, at the very least, they are the only Plaintiffs that can assert Count III.

Count IV purports to allege a vagueness claim under the Fourteenth Amendment. "For a vagueness claim that allegedly chills speech, a plaintiff must show that (1) he seriously wishes to speak; (2) such speech would arguably be affected by the challenged prohibition, but the rules are at least arguably vague as they apply to him; and (3) there is at least a minimal probability that the rules will be enforced if they are violated." *Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, No. 4:22cv304, 2022 WL 16985720, at *32 (N.D. Fla. Nov. 17, 2022) (citing *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010)). "The standing analysis here is similar to the analysis for a pre-enforcement free speech claim, because the claimed injury is self-censorship or speaking with the risk of discipline." *Id.* Thus, for the reasons already stated with respect to Count I, the only Plaintiffs that have sufficiently alleged standing at this juncture are P.C. and M.C. The remaining claims as to Count IV must be dismissed for lack of standing.

Lastly, in Count V Plaintiffs seek to assert a claim for violations of their equal protection rights. In this regard, the Student and Parent Plaintiffs direct this Court to allegations that S.C. and Larkins have experienced an increase in bullying at their schools and R.R.D. and K.R.D. are concerned that the school cannot effectively respond to bullying. Additionally, Plaintiffs cite the removal of certain books and materials from schools—although only N.C. alleges a desire to access such books—; the removal or alteration of student support guides in Duval County and Palm Beach County; and the cancellation of certain programs and classes in Palm Beach County. Because there are no Plaintiffs enrolled in Duval or Palm Beach Counties and this Court has already determined that CenterLink failed to establish standing in this case, any injuries related to actions taken by those counties cannot support standing for the Parent and Student

Plaintiffs and will not be discussed further. Additionally, the Court notes that the allegations cited in support of injury on Count V fail to allege any specific injury to Matthew and Jennifer Cousins, Dinan, Gongidi, M.C., or P.C., and these Plaintiffs have not attempted to argue or establish that they have standing to assert the equal protection rights of third parties. *See Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

First, to the extent S.C. and Larkins rely on the alleged increase in bullying as a result of their LGBTQ+ identities, Plaintiffs have fallen far short of alleging standing. To be clear, S.C. and Larkins allege that they have seen an increase in bullying by their peers since the passage of the law. However, they fail to offer any allegations or arguments to tie the bullying by their classmates to the law at all and certainly not to anything more than the existence of the law. Furthermore, Plaintiffs fail to explain how anything this Court could do would remedy their harm. This Court, as much as it might like to, cannot order students to be kind to each other or to cease bullying their peers. To the extent Plaintiffs argue that their harm would be partially redressed by allowing the schools to address bullying, Plaintiffs have failed to allege that the schools are not currently addressing bullying or that LGBTQ+ students are subjected to unequal treatment in the school's approach to remedying bullying. Thus, S.C. and Larkins have clearly fallen short of establishing standing on this basis. Similarly, the conclusory and amorphous fear regarding the school's potential response to bullying alleged by K.R.D. and R.R.D. fails to state how they have been injured or could be injured because of the law or how this would impact their equal protection rights.

Second, to the extent N.C. cites the removal of books by various schools and counties in support of his equal protection claim, this allegation, without further

elaboration or argument by Plaintiffs, fails to allege injury.  To be clear, although N.C. alleges that Orange County is reviewing books with LGBTQ+ characters, he does not allege that the County is reviewing only books with such characters.  Rather, Plaintiffs also allege that Orange County "instructed that books that 'make written or pictorial reference' to *sexual orientation or gender identity*" be removed.  (Doc. 82, ¶ 37 (emphasis added)).  Because there is no allegation that N.C.—or any other Plaintiff—has been treated unequally by the removal of materials or the selection of material to be removed, Plaintiffs have failed to allege an injury.  *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (holding that a law that subjects someone to "unequal treatment . . . solely because of his gender" is legally cognizable); *I.L. v. Alabama*, 739 F.3d 1273, 1278–1279 (11th Cir. 2014); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009).  Furthermore, even if N.C. had alleged an injury, Plaintiffs have still failed to show this would be redressable for the same reasons discussed with respect to Count II.  Therefore, no Plaintiff has adequately alleged standing as to Count V.

### C.  *Monell* Liability

With respect to the limited claims for which standing exists, the County Defendants move to dismiss for failure to state a claim.  In the Second Amended Complaint, Plaintiffs allege claims against the County Defendants for constitutional violations pursuant to 42 U.S.C. § 1983.  As set forth in this Court's October 20, 2022 Order, because school boards are branches of local government, to hold a school board liable under § 1983, Plaintiffs must allege a policy, custom, or practice that was the driving force behind the purported constitutional violation.  (Doc. 81 at 9 & n.2).  In their Motions, Orange County, Duval County, and Indian River County argue that Plaintiffs have still failed to do so.  In

their Response, Plaintiffs argue that they are not required to plead an official policy because they are not seeking to hold the County Defendants vicariously liable. Plaintiffs have not offered any legal authority in support of this proposition and the Court is unaware of any such exception under § 1983. *Cf. Pasadena Republican Club v. W. Just. Ctr.*, 424 F. Supp. 3d 861, 879–80 (C.D. Cal. 2019); *see also Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) ("It is well established that in a § 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of official municipal policy." (quotation omitted)).[5]

Plaintiffs also argue, in a footnote, that "each School Board Defendant has taken some district or board level action evidencing a policy, practice, or custom to implement the Law." (Doc. 128 at 15 n.10). As an initial matter, this Court is not obligated to address arguments raised in passing in a footnote or that are perfunctory and underdeveloped. *See Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950-Orl, 2014 WL 12617784, at *3 (M.D. Fla. Dec. 5, 2014) ("[W]here an argument on the merits has been summarily raised in a footnote, the court may decline to address the argument." (quotation omitted)); *W. Sur. Co. v. Steuerwald*, No. 16-61815-CV, 2017 WL 5248499, at *2 (S.D. Fla. Jan. 17,

---

[5] While some Courts have recognized that a plaintiff may be able to bring a claim for prospective injunctive relief against a municipality pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), where the defendant was acting as an arm of the state in the context of the claim, Plaintiffs have not argued that they intended to sue the County Defendants as arms of the state. *See Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022); *Dream Defenders v. DeSantis*, 553 F. Supp. 3d 1052, 1085–86 (N.D. Fla. 2021). Furthermore, the Second Amended Complaint specifically states that the claims are brought pursuant to § 1983, does not reference *Ex Parte Young*, does not allege that the County Defendants were acting as arms of the state, and Plaintiffs seek nominal and compensatory damages, which are not available under *Ex Parte Young*. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Thus, it does not appear that Plaintiffs have sought to invoke this exception and the Court will not consider its application in this case.

2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived."); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (noting that the court need not consider "perfunctory and underdeveloped" arguments and that such arguments are waived); *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Furthermore, the allegations in the Second Amended Complaint that Plaintiffs cite still fail to properly allege a *Monell* claim.

"To state a *Monell* claim, a plaintiff must allege facts showing: '(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'"  *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  With respect to Duval County, Plaintiffs allege that the County adopted "a procedural policy for parental notification but provided no clarification on the meaning of the vague terms." (Doc. 82, ¶ 40).  Even if this vague and conclusory reference to a policy was sufficient to meet the second prong, Plaintiffs have failed to allege how the parental notification requirements constitute a violation of a constitutional right and also fail to provide any connection between the policy adopted by Duval County and the alleged violation. Similarly, Plaintiffs allege that Indian River County and Orange County have adopted procedures to implement the private right of action, (*id.* ¶ 42), but again Plaintiffs have failed to allege or argue how that specific provision violates a constitutional right and, even if it does, how the policies adopted by the Counties are the driving force behind that violation.   Accordingly, Plaintiffs have failed to allege a claim against Orange County,

Duval County, or Indian River County and the Second Amended Complaint will be dismissed as to these Defendants for failure to state a claim.

Although, as set forth above, no Plaintiff has established standing to assert claims against Palm Beach County, CenterLink also failed to properly allege a claim against Palm Beach County under *Monell*.  Palm Beach County did not address or raise this issue in its Motion, but the Court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) unless: "1) the defendant has not filed an answer and the plaintiff still had a right to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure; 2) the plaintiff has brought his claim in good faith; and 3) the district court has failed to provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."  *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1069 (11th Cir. 2007); *see also Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) ("A district court can only dismiss an action on its own motion as long as the procedure employed is fair." (quotation omitted)). Although Defendants have not filed answers in this case, they have each filed a motion to dismiss and Plaintiff no longer has leave to amend as of right under Rule 15(a). Additionally, the Court specifically noted that Plaintiffs failed to plead *Monell* liability in their First Amended Complaint and told Plaintiffs that failure to correct the deficiency could result in dismissal without further notice.  (Doc. 81 at 9–10, 28).  Lastly, the argument is raised by each of the other County Defendants and applies equally to the claims against Palm Beach County as does Plaintiffs' deficient Response.  *See Am. United Life Ins. Co.*, 480 F.3d at 1069–70; *see also Makere v. Early*, No. 21-11901, 2021 WL 6143553, at *2 & n.6 (11th Cir. Dec. 30, 2021) (holding that the court could dismiss *sua sponte* as long the defendant had been served and the plaintiff had notice and an opportunity to

respond).  Having reviewed the Second Amended Complaint, Plaintiffs allege that Palm Beach County has the following policies: (1) library media specialist are to sit on the committee to review parent complaints and to review books for potential violations of the law; (2) employees will be disciplined for attempting to encourage students to withhold information from their parents; and (3) teachers are to review classroom books and remove those that might violate the law.  (Doc. 82, ¶¶ 37, 41).  Nevertheless, CenterLink— the only Plaintiff bringing claims against Palm Beach County—has failed to allege how the review and removal of books violates its constitutional rights.  In fact, CenterLink does not join in Count II, alleging a violation of the right to receive information, and Palm Beach County is not otherwise named in that count.  (*Id.* ¶¶ 150–153).  In other respects, CenterLink has failed to apprise the Court how potential discipline for teachers encouraging students to withhold information from their parents or the makeup of the complaint review committee violates a constitutional right, let alone how the policies by Palm Beach County would be a driving force of any such violation.  Therefore, the Court finds that the counts against Palm Beach County also fail to state a claim under § 1983.

### D.    Leave to Amend

"A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."  *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  Plaintiffs have neither filed a motion for leave to further amend their pleading nor requested such relief in their Response.  Furthermore, the Court is not required to permit amendment where the plaintiff has already been given an opportunity to cure the deficiencies and has failed to do so.  *Bryant*

*v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not [ ] allow an amendment [ ] where there has been . . . repeated failure to cure deficiencies by amendments previously allowed.").  Here, the Court's October 20, 2022 Order explicitly put Plaintiffs on notice of the deficiencies in their pleading and granted them an opportunity to correct the same.  There is no indication in Plaintiffs' Response or otherwise that they can or will correct their pleading issues if given additional opportunities to do so.  Consequently, this Court is not obligated to permit Plaintiffs to amend the Second Amended Complaint *sua sponte* and declines to do so.

### E.    State Board Defendants

In the Second Amended Complaint, Plaintiffs also assert claims against the State Board Defendants.  (Doc. 82, ¶¶ 131, 150, 159, 167, 180).  These claims and Defendants did not appear in the First Amended Complaint, (*see generally* Doc. 79), and were first added when the Second Amended Complaint was filed on November 3, 2022.  While the Court granted Plaintiffs leave to amend the First Amended Complaint to correct the standing issues with regard to their claims, this grant did not extend to the addition of new claims and parties.  (Doc. 81 at 27–28).  Plaintiffs did not seek leave to add the State Board Defendants and the Second Amended Complaint was filed after the deadline for doing so.  (Doc. 75 at 2).  Therefore, because Plaintiffs did not have leave to add the State Board Defendants and did not timely seek permission to add additional parties, the claims against the State Board Defendants will also be dismissed.

### IV.    CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. The County Defendants' Motions (Doc. Nos. 109, 110, 111, 113) are **GRANTED**.

2. The Second Amended Complaint (Doc. 82) is **DISMISSED without prejudice**.

3. All other Motions are **DENIED as moot**.

4. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Orlando, Florida on August 16, 2023.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record